Nathan ELLIOTT *v.* STATE of Arkansas

CR 98-373                                    984 S.W.2d 362

Supreme Court of Arkansas
Opinion delivered December 17, 1998

[Petitions for rehearing denied January 28, 1999.]

*Bruce J. Bennett,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Nathan Elliott appeals his convictions on two counts of rape of his stepdaughter, C.Q., who was twelve and thirteen years old at the time of the

crimes. Elliott was sentenced to two life terms to be served consecutively. He raises three points for reversal.

Elliott first contends that the trial court erred when it denied his motion to suppress a taped recording of Elliott's long-distance telephone conversations with C.Q. His wife, Alma, had become suspicious of his relationship with C.Q., and she decided to monitor and tape telephone calls he made to the couple's home when he was working in Texas. The tape revealed Elliott had had sex with C.Q., and upon learning of this fact, Alma reported the matter to the police.

In arguing Alma's tape should have been excluded at trial, Elliott relies on the case of *Mock v. State*, 20 Ark. App. 72, 723 S.W.2d 844 (1987). He also asserts that Ark. Code Ann. § 5-60-120 (Repl. 1993) precluded the tape's introduction. Section 5-60-120 makes it unlawful for a person to intercept and record a telephone conversation between two parties unless that person is a party to the communication, or one of the parties has given prior consent to such interception and recording. Elliott claims that because neither he nor C.Q. authorized Alma to record their telephone conversation, Alma's tape was inadmissible. The statute, however, does not proscribe the admissibility of an unlawful recording, and Elliott offers no authority providing that an unlawful taping by a private citizen of parties' electronic communication is inadmissible. In fact, we have stated the general rule is that the search and seizure clauses are restraints upon the government and its agents, not upon private individuals; the corollary to this proposition is that the exclusionary rule is not intended as a restraint upon the acts of private individuals. *Hill v. State*, 315 Ark. 297, 867 S.W.2d 442 (1993); *Houston v. State*, 299 Ark. 7, 771 S.W.2d 16 (1989).

The *Mock* decision that Elliott cites is an unavailing defense as well. In that case, the court of appeals considered a federal statute, 18 U.S.C. § 2511(2)(c) (1982), when deciding whether police officers' recording of an informant's conversation with Mock was unlawful and therefore inadmissible. Once again, that federal law concerns the placement of restraints upon govern-

ment or state actors, not private individuals. Specifically, § 2511(2)(c) in relevant part provides that it is not unlawful for a person *acting under color of law* to intercept an electronic communication where such person is either a party to the communication or one of the parties gave the person prior consent to intercept the communication. As previously stated, Alma was in no way a state actor, and her independent unlawful decision to intercept and record Elliott's phone call to C.Q. was not excludable under federal or state law.

Elliott next argues the trial court erred in denying a mistrial after the state mentioned Elliott's prior felony conviction in its opening statement. The prosecutor's remarks were as follows:

> One of the factors that you're going to hear testimony about is that Nathan Elliott has been before the law before. He was convicted in Texas of assault and bank robbery. We have a certified copy of his conviction.[1]

Elliott's counsel promptly objected, and the trial court sustained the objection. Elliott then moved for a mistrial which the trial court denied. The prosecutor explained that, because Elliott was charged with being a habitual offender, the State could reference the Texas conviction, and the conviction was also proper to show Alma's and C.Q.'s state of mind and why they feared Elliott. The trial court correctly rejected the prosecutor's explanations, but immediately admonished the jury not to consider Elliott's prior trouble with the law. At trial, and in this appeal, Elliott argues the admonishment was insufficient to remove the prejudice the remark had on the jury. In support of his argument, Elliott directs the court to *Francis v. City of Benton*, 240 Ark. 779, 402 S.W.2d 110 (1966), and *Miller v. State*, 239 Ark. 836, 394 S.W.2d 601

---

[1] The record on this point is confusing, as the record reflects the prosecutor stated Elliott was convicted of assault *and* bank robbery, but the Judgment and Commitment Order shows a conviction for assault *in* bank robbery. In addition, the State amended the information to charge Elliott as a habitual offender with at least one serious felony under Ark. Code Ann. § 5-4-501(c)(1) and (2), rather than as a habitual offender with at least one but less than four felonies under Ark. Code Ann. § 5-4-501(a).

(1965), where prosecuting attorneys mentioned the defendants' prior convictions in their opening remarks at trial, and this court reversed, holding the remarks amounted to prejudicial error and a denial of due process. *See also Allard v. State*, 283 Ark. 317, 675 S.W.2d 829 (1984) (court reversed and remanded for new trial where trial court's clerk at commencement of proceeding improperly read original indictment that contained two theft counts and trial court denied defendant's mistrial motion).

Here, the State appears to concede that the prosecutor's remarks constituted error, but argues that the error was harmless because of the overwhelming evidence of Elliott's guilt. As previously discussed, the jury heard Elliott's own voice via Alma's tape recording wherein Elliott admitted having had sex with C.Q. C.Q. corroborated Elliott's admissions by testifying to the details of when, how, and where Elliott and C.Q. had sexual intercourse. C.Q.'s sister, K.Q., also testified that Elliott had sexual conduct with her beginning when K.Q. was eight years old. In addition, Nurse Pamela Speed had performed a gynecological exam of C.Q. and confirmed C.Q. had been penetrated numerous times. Elliott offered no evidence to rebut the State's evidence. The pertinent issue is whether the State's evidence rendered the State's remarks harmless.

■ The foundation for the harmless–error rule in cases involving federal constitutional rights is *Chapman v. California*, 386 U.S. 18 (1967), which this court discussed in *Numan v. State*, 291 Ark. 22, 722 S.W.2d 276 (1987). The *Numan* court quoted the following relevant passage from the *Chapman* decision:

> In fashioning a harmless constitutional error, we must recognize that harmless error can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one.

\* \* \*

We prefer the approach of this Court in deciding what was harmless error in our recent case of *Fahy v. Connecticut*, 375 U.S. 585. There we said, "the question is whether there is a reasonable possibility that the audience complained of might have contributed to the conviction."

We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard, although achieving the same result as that aimed at in our *Fahy* case.

■ Our court has considered the application of the *Chapman* harmless-constitutional-error rule in numerous cases and, in doing so, has held that we can declare that the error is harmless beyond a reasonable doubt. *Numan*, 291 Ark. 22, 28, 722 S.W.2d 276, 279; *Efurd v. State*, 334 Ark. 596, 976 S.W.2d 928 (1998); *Landreth v. State*, 331 Ark. 12, 960 S.W.2d 434 (1998). *But see Thompson v. State*, 284 Ark. 403, 682 S.W.2d 742 (1985) (violation of *Doyle* post-arrest-silence doctrine was so flagrant that it could not be considered harmless error); *Ward v. State*, 272 Ark. 99, 612 S.W.2d 118 (1981) (violation of the *Doyle* post-arrest-silence doctrine was so egregious that it could not be harmless).

■ In the instant case, even assuming the best intentions on the prosecutor's part, he deliberately told the jury before presenting any evidence during the guilt phase of the trial that Elliott had been convicted of assault and bank robbery. Thus, from the commencement of the State's case, the State labeled Elliott a habitual criminal, thereby removing one of the constitutional benefits afforded all defendants in a criminal case — a right to a fair and impartial jury. *See Allard*, 283 Ark. at 318, 675 S.W.2d at 830 (where, at beginning of trial, the court clerk read to the jury the aggravated-robbery indictment, which included two additional charges of theft by receiving pending against Allard in a sep-

arate case). Although the trial judge here tried to admonish the jury in an attempt to cure the error, this is not the sort of error that can be so cured. *See id.* We are mindful of this court's decision in *Stanley v. State*, 324 Ark. 310, 920 S.W.2d 835 (1996), where the State's opening statement included a reference to "other offenses in another county," and this court held prejudicial error did not occur because overwhelming evidence existed as to Stanley's guilt. There, however, the State never specified Stanley's other charges or offenses, so we held that an admonition could have ameliorated the prosecutor's reference. Here, like the situation in *Allard*, the jury was told of Elliott's specific felony convictions and the jury was left with no doubt from the time the trial commenced that defendant Elliott was a habitual felon. Because the State's error was egregious at the outset of the trial, we cannot conclude beyond a reasonable doubt that the prosecutor's remark did not contribute to Elliott's conviction. Thus, we reverse and remand on this point.

In his third point, Elliott urges that the trial court erred in allowing the State to amend its information at trial during the sentencing phase and before the punishment issue was submitted to the jury. On June 19, 1996, the State charged Elliott as a habitual offender with more than one, but less than five felony convictions. Later, on February 18, 1997, the prosecutor wrote Elliott's first attorney, notifying him that the State would seek an enhanced sentence based upon Elliott's conviction for assault and bank robbery because that conviction, which is analogous to Arkansas's aggravated robbery crime, constitutes a prior violent crime as defined in Ark. Code Ann. § 5-4-501(c)(1) and (2) (Supp. 1995). The State did not actually move to amend its information to incorporate this change until the sentencing phase of the trial on August 4, 1997.

In *Kilgore v. State*, 313 Ark. 198, 852 S.W.2d 810 (1993), we reiterated the well-settled law that an information may be amended after a jury has been sworn but before the case has been submitted to it, as long as the amendment does not change

the nature or degree of the crime charged, if the accused is not surprised. The fact that an amendment authorizes a more severe penalty does not change the nature or degree of the offense. *Id.* *See also Baumgarner v. State,* 316 Ark. 373, 872 S.W.2d 380 (1994) (such an amendment authorizes a more severe punishment, not by creating an additional offense or an independent crime, but by affording evidence to increase the final punishment in the event the defendant is convicted).

Here, both Elliott and his counsel knew of the Texas felony conviction and, while Elliott's second counsel asserts that he was never apprised of the prosecutor's February 18, 1997 letter informing the defense that the State intended to amend the habitual aspect of its information, it was not the fault of the State. Nonetheless, Elliott and his second counsel were prepared to defend the original habitual-offender charge, and his arguments ring hollow in suggesting he was surprised by the substance of the State's amendment. In addition, Elliott's second counsel was notified of the planned amendment at a June 9, 1997 pretrial hearing. As was the case in *Baumgarner,* Elliott simply failed to show any unfair surprise in the State's rewording and amending of its information. *See* 316 Ark. at 379-380.

For the reasons set forth above, we reverse and remand.