Darlene FORD *v.* STATE of Arkansas

CA CR 00-842 55 S.W.3d 315

Court of Appeals of Arkansas
Division III
Opinion delivered September 26, 2001

*Randel Miller*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Darlene Ford appeals her convictions for possession of ephedrine and for being an accomplice to the manufacture of methamphetamine, for which she was sentenced to concurrent terms of six and ten years in the Arkansas Department of Correction, respectively. She argues that there is insufficient evidence to support the convictions entered by the Greene County Circuit Court. We affirm her conviction of possession of ephedrine but reverse her conviction of being an accomplice to the manufacture of methamphetamine.

 Appellant filed timely motions for directed verdict, which were denied. This permits her to contest the sufficiency of the State's evidence against her, inasmuch as a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999). The test for such motions is whether the verdict is supported by substantial evidence, direct or

circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Peeler v. State,* 326 Ark. 423, 932 S.W.2d 312 (1996); *Ferrell v. State,* 325 Ark. 455, 929 S.W.2d 697 (1996). Circumstantial evidence may constitute substantial evidence, but it must exclude every other reasonable hypothesis consistent with innocence. *Gregory v. State,* 341 Ark. 243, 15 S.W.3d 690 (2000); *Williams v. State,* 338 Ark. 97, 991 S.W.2d 565 (1999). Whether the evidence excludes every hypothesis is left to the jury to determine. *Williams, supra.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Barr v. State, supra.* We make no distinction between direct and circumstantial evidence when reviewing the sufficiency of the evidence. *Williams, supra.* Neither do we pass on the credibility of the witnesses; that duty is left to the trier of fact. *Cobb v. State,* 340 Ark. 240, 12 S.W.3d 195 (2000); *Stewart v. State,* 338 Ark. 608, 999 S.W.2d 684 (1999).

The evidence at the jury trial, viewed in the light most favorable to the State, revealed that in January 1999, an investigation was underway in Paragould, Arkansas, regarding the reported sale of large quantities of pseudoephedrine tablets at a Junior Food Mart on Highway 412 East. The Paragould Police Department sent a confidential informant to the store to purchase pseudoephedrine tablets, ether, and lithium batteries, in a controlled buy. The informant purchased two cans of starting fluid and two packages of "AA" lithium batteries on January 18, 1999. Two days later on January 20, the informant purchased two cans of starting fluid, fifteen bottles of pseudoephedrine tablets, and two packages of "AA" lithium batteries. The next day, January 21, the informant purchased twenty-four bottles of pseudoephedrine tablets. On February 11, 1999, the informant purchased fifteen bottles of pseudoephedrine tablets and four cans of starting fluid. On February 17, 1999, the informant purchased twelve bottles of pseudoephedrine tablets, two cans of starting fluid, and one package of lithium batteries.

In the midst of these transactions, Roger Case, a narcotics investigator with the Little Rock Police Department assigned to the Drug Enforcement Agency, opened a case file based upon the sales made at the Junior Food Mart and targeted the store as a major distributor of pseudoephedrine and ephedrine. Appellant was the store manager and was the person most often involved in sales of pseudoephedrine.

Case presented himself to appellant at the store on February 2, 1999, asking to purchase her entire stock of pseudoephedrine pills in one buy, just in case the enforcement authorities were following him. In his conversation with appellant, they discussed methamphetamine production, and Case offered to trade the pills for methamphetamine. Case again presented himself to appellant on June 30, 1999, and bought 144 bottles of pseudoephedrine for $1200, though he offered to trade the finished drug for the pills. Case brought the $1200 in payment on July 14, at which time he also purchased lithium batteries and again discussed trading the pills for the finished drug. Appellant had explained to Case that she would not "hold" any quantity for him; she sold the pills on a "first come, first serve" basis as they were delivered from the wholesaler.

When Case arrived at the store on September 1 to purchase more pills, appellant was not there but was on sick leave. Case was also told that appellant had with her five cases of pseudoephedrine pills, the store's entire stock, which was against store policy. Later that day, Case called appellant on her cell phone and arranged to meet her in Jonesboro to purchase a case. Upon meeting in a restaurant parking lot, appellant gave Case a price of $1350 for one case; Case only had $1200 and offered her the difference in methamphetamine, which appellant declined. Appellant took the $1200 and accepted Case's promise to pay the $150 later. Case left after consummating the purchase, and he notified authorities of what appellant had in her Jeep. Her vehicle was stopped for a moving violation, and officers seized the four remaining cases of pseudoephedrine tablets, each case containing 144 bottles. These events led to the charges being filed against her.

At trial, Case testified that one method of manufacturing methamphetamine is "the Nazi method." Case related that this method requires ephedrine, large amounts of ether that can be found in starting fluid, large amounts of sodium metal or lithium that can be extracted from lithium batteries, and anhydrous ammonia. Case testified that, assuming a 72% yield, one case of pseudoephedrine tablets yields 886 grams of methamphetamine. The State entered into evidence the cases of pills retrieved from her vehicle, a box containing cans of starting fluid, the various items purchased by the informant and Case on the dates listed above, and one cassette tape of a recorded interview with appellant.

Appellant testified in her own defense that she was urged by upper management to sell the pills. She stated that pills that were invoiced from wholesale to other store locations were sent to her

store to sell. The store had a permit to sell the pills. She maintained that she figured out what the sales were being used for, and she did not condone it, but she was authorized and encouraged to sell whatever amount was available. She admitted that she delivered large quantities of the pills to a storage facility for another man on one occasion. She did not deny selling a case of the pills to Case in the parking lot that day, though most of the transactions were performed at her desk in the store, keeping the cash in her desk until entering them later in the retail register. Appellant did not deny that she overcharged in bulk sales and that these were cash transactions, nor did she deny that she was wrong to pocket the difference. Appellant denied any knowledge that what she was doing was criminal.

The jury was instructed on the law, and after deliberation, found her guilty of possessing more than five grams of ephedrine[1] and being an accomplice to the manufacture of methamphetamine. This appeal arises from those judgments.

### Possession of Ephedrine

Appellant argues that she is not guilty of violating Ark. Code Ann. § 5-64-1101 (Repl. 1997), which provides:

(a) It shall be unlawful for any person to possess more than five (5) grams of ephedrine, its salts, optical isomers and salts of optical isomers, alone or in a mixture, except;

(1) Any pharmacist or other authorized person who sells or furnishes ephedrine, its salts, optical isomers and salts of optical isomers, upon the prescription of a physician, dentist, podiatrist, or veterinarian; or

(2) Without a prescription, pursuant to the Federal Food, Drug, and Cosmetic Act or regulations adopted thereunder provided that the person possesses a sales and use tax permit issued by the Arkansas Department of Finance and Administration; or

---

[1] We recognize, as does the State, that the charging document and judgment reflect that the State was proceeding on Ark. Code Ann. § 5-64-1102, possession of ephedrine with intent to manufacture, but the jury verdict and all arguments at trial related to Ark. Code Ann. § 5-64-1101, possession of more than five grams of ephedrine. The parties agree that this is the appropriate law applicable herein, and we address the appeal with that stipulation.

(3) Any physician, dentist, podiatrist, or veterinarian who administers or furnishes ephedrine, its salts, optical isomers and salts of optical isomers, to his or her patients; or

(4) Any manufacturer, wholesaler, or distributor licensed by the State Board of Pharmacy who sells, transfers, or otherwise furnishes ephedrine, its salts, optical isomers and salts of optical isomers, to a licensed pharmacy, physician, dentist, podiatrist, veterinarian, or any person who possesses a sales and use tax permit issued by the Arkansas Department of Finance and Administration.

(b) Any person who violates the provisions of this section shall be guilty of a Class D felony.

■ ■ The evidence demonstrates that four cases of pseudoephedrine were seized from her car containing 576 bottles of pseudoephedrine tablets, and appellant does not contest that she possessed more than five grams of ephedrine. Her contention is that she held the tablets under the authority permitted to the store. However, appellant is the person most interested in the outcome of this trial, and she was in possession of the store's property, selling it outside the store and admittedly keeping profits from these sales. This was a fact question on credibility, left to the fact finder to resolve and which we do not disturb on appeal. *Ashe v. State*, 57 Ark. App. 99, 942 S.W.2d 267 (1997). We hold that sufficient evidence supports her conviction on this charge.

*Accomplice to the Manufacture of*
*Methamphetamine*

Appellant also challenges the sufficiency of the evidence to convict her of accomplice to manufacturing methamphetamine, asserting that there was no proof that anyone manufactured methamphetamine. Therefore, she argues, because the proof did not establish that an underlying crime was committed, she could not be convicted of being an accomplice to it. The State argues that appellant was guilty as an accomplice via her attempts to provide most of the precursors of the drug. Appellant's argument is well-taken.

■ ■ Manufacturing of controlled substances is defined in Ark. Code Ann. § 5-64-101(m) (Repl. 1997), and it states:

"Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use or the preparation, compounding, packaging, or labeling of a controlled substance:

(1) By a practitioner as an incident to his administering or dispensing of a controlled substance in the course of his professional practice; or

(2) By a practitioner or by his authorized agent under his supervision for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale;

Appellant was charged and convicted as an accomplice to the crime of manufacture of methamphetamine. The status of an accomplice is defined in Ark. Code Ann. § 5-2-403 (Repl. 1997):

(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

(3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense, he:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result; or

(3) Having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

There is no distinction between criminal liability of an accomplice and the person who actually commits the offense. *Riggins v. State*, 317 Ark. 636, 882 S.W.2d 664 (1994). However, as pointed out by appellant, we have held that "an accomplice's liability does not attach until the State proves that the substantive crime was completed." *Savannah v. State*, 7 Ark. App. 161, 164, 645 S.W.2d 694, 695 (1983). The 1988 Supplementary Commentary to the statute on accomplice liability reiterates this reasoning:

> It speaks in terms of completed offenses. Normally, one is not an accomplice to an offense if, despite his encouragement, no offense is committed. . . . For example, if A agrees to aid B to manufacture and sell drugs, A has no criminal liability on accomplice theory unless B actually commits the offense planned.

The State is correct when it points out that appellant admitted that she was told that the pills were being used to manufacture methamphetamine, appellant knew that the only product that she did not sell that was necessary to the production of methamphetamine was anhydrous ammonia, and appellant overcharged for the cost of the pills and kept the difference. It cites to *Smith v. State*, 68 Ark. App. 106, 3 S.W.3d 712 (1999), for the proposition that the presence of all the components necessary to manufacture methamphetamine except one is sufficient evidence to support a conviction. However, in that case, the components were found in Smith's home, along with the equipment for a working lab. The appeal before us now is for the crime of acting as an accomplice to an offense that was not proven by any of the State's evidence. Indeed, the ingredients purchased were entered into evidence in the same packaging that they were in when purchased by the informant and Case. Based upon the Commentary and our prior decision relating to this issue, we conclude that sufficient evidence does not exist to support appellant's conviction for being an accomplice to manufacturing methamphetamine. We reverse and dismiss this conviction.

Affirmed in part and reversed in part.

BIRD and VAUGHT, JJ., agree.