Donald Vern SAUL *v.* STATE of Arkansas

CR 05-754                                              225 S.W.3d 373

Supreme Court of Arkansas
Opinion delivered January 26, 2006

Washington County Public Defender's Office, by: *Lisa C. Parks*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Donald Vern Saul appeals his judgment of conviction for manufacturing

methamphetamine and his sentence of 360 months. On appeal, he argues multiple points. We affirm the judgment of the circuit court and reverse the decision of the court of appeals.

On February 13, 2002, Officer Andy Lee of the Bentonville Police Department stopped Saul for speeding in a white van in Bentonville. After running a warrants check on Saul, he discovered that Saul had an outstanding misdemeanor warrant for forging checks. Officer Lee arrested Saul based on the warrant, searched the van, and found a blue plastic container in the rear of the vehicle.[1] He opened the container and found items and substances he associated with a methamphetamine lab. After that discovery, Officer Lee backed away from the van and secured the scene. He also called in another investigator to assist him with the processing of the found items. Evidence was collected, following which some of the items from the blue container were sent to the crime lab and other items were sent to an environmental agency for disposal. When Officer Lee later questioned Saul at the jail about the blue container, Saul denied ever having seen it before. Officer Lee described Saul's denial in his affidavit of probable cause dated February 20, 2002. Saul was charged with manufacturing methamphetamine, based on the contents of the blue container, and also as a habitual offender with two prior convictions for possession of drug paraphernalia.

Before trial, the State filed a motion to introduce Rule 404(b) evidence to prove Saul's knowledge of the manufacturing process. The proposed Rule 404(b) evidence consisted of two prior criminal episodes. Saul objected to this evidence. The circuit court ruled that the State would be permitted to introduce its Rule 404(b) evidence at trial through the testimony of two police officers. The first witness was Detective Paul Woodruff of the Harrison Police Department, who testified both at the Rule 404(b) hearing and at trial that he arrested Saul for manufacturing methamphetamine in 1998. He explained that Saul ultimately pled guilty to possession of drug paraphernalia. The second witness, Officer Russ Allen of the Rogers Police Department, testified at both the Rule 404(b) hearing and at trial that he was called to the scene in 2000 when Wal-Mart personnel suspected Saul of shoplifting pseudoephedrine tablets, a known precursor for the manu-

---

[1] The parties stipulated to the fact that the search was lawful.

facture of methamphetamine. Saul was not arrested for drug-related offenses but was arrested for shoplifting.

On November 3, 2003, Saul was tried before a jury on the charge of manufacturing methamphetamine which derived from the February 13, 2002 traffic stop. The State introduced, as part of its case-in-chief, the testimony of Officer Lee, Detective Woodruff, and Officer Allen, as well as testimony from a representative of the Arkansas State Crime Lab, Matthew Sarver. Saul testified in his defense that he had been at work all day on February 13, 2002, and that he was on his way to have dinner with his ex-wife and children at the time he was stopped by Officer Lee. Saul denied any ownership or knowledge of the blue container that was found in his vehicle. The jury found Saul guilty of manufacturing methamphetamine and sentenced him to thirty years.

Saul appealed his judgment of conviction to the court of appeals, and that court reversed based on a violation of Rule 404(b). *See Saul v. State*, 92 Ark. App. 49, 211 S.W.3d 1 (2005). We subsequently granted review. When this court grants review, we consider the appeal as if it had been originally filed in this court. *Malone v. State*, 364 Ark. 256, 217 S.W.3d 810 (2005).

## I. *Sufficiency of the Evidence*

Saul first claims that his motion for a directed verdict should have been granted because the evidence at trial was insufficient to prove that he had actually engaged in the manufacture of meth-amphetamine. Saul cites this court to *Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001), where he claims that this court held the evidence sufficient to prove manufacture of methamphetamine after the state had presented evidence that all of the ingredients, solvents, chemicals, and hardware necessary to manufacture meth-amphetamine had been found, together with the additional factor of the defendant's attempted flight from the scene. Saul also relies on *Ford v. State*, 75 Ark. App. 126, 55 S.W.3d 315 (2001), where the court of appeals found the evidence insufficient that the defendant was an accomplice to manufacturing methamphet-amine, when the State was unable to prove that the process had actually taken place.

Saul also argues that there was no direct evidence that he actually had manufactured methamphetamine. In this regard, he explains that there was no heat source found among the items in

the blue container and that Officer Lee testified that a heat source was necessary for the type of manufacturing process that was alleged in this case (the red phosphorus method). Additionally, Saul notes that there were other items necessary for the manufacturing process that were not found in the blue container, including no empty or used bottles of hydrogen peroxide; no used striker plates; no baggies for packaging the unfinished product; no clean coffee filters to filter the unfinished product; and no powder methamphetamine (the finished product). He further emphasizes that no objects were sent to the crime lab for fingerprinting. As a final point, he contends that the blue container did not belong to him. In sum, Saul claims that the circumstantial evidence presented at trial clearly allows for other reasonable explanations consistent with innocence, and that the jury had to resort to surmise and conjecture to find him guilty of manufacturing methamphetamine.

Our standard of review for a challenge to the sufficiency of the evidence in a criminal case has often been stated:

> We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Coggin v. State,* 356 Ark. 424, 156 S.W.3d 712 (2004). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

> Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Edmond v. State,* 351 Ark. 495, 95 S.W.3d 789 (2003). Whether the evidence excludes every other hypothesis is left to the jury to decide. *Carmichael v. State,* 340 Ark. 598, 12 S.W.3d 225 (2000). The credibility of witnesses is an issue for the jury and not the court. *Burley v. State,* 348 Ark. 422, 73 S.W.3d 600 (2002). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

*Tillman v. State,* 364 Ark. 143, 146, 217 S.W.3d 773, 775-76 (2005).

Saul was convicted of manufacturing methamphetamine, in violation of Ark. Code Ann. § 5-64-401(a) (Repl. 1997). Section 5-64-101(m) (Repl. 1997) of the Arkansas Code Annotated defines "manufacture":

> "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container[.]

We agree with the State that the evidence supporting Saul's conviction is more than sufficient. The arresting officer, Officer Lee, was extensively trained, certified, and experienced in the identification of methamphetamine labs and the production of methamphetamine. Officer Lee testified that he smelled a strong chemical odor coming from Saul's van after he stopped Saul. Inside the van, Officer Lee found a blue plastic container that contained what he recognized as a methamphetamine lab. The State lists dozens of items found in the blue plastic container which are associated with producing methamphetamine by the red phosphorus method, including jars, tubing, funnels, lye, filters stained with red sludge, filters containing iodine crystals, hydrogen peroxide, camping fuel, acetone, hand scales, materials used as a hydrogen chloride gas generator, and items for cutting such as scissors, knives, and razor blades.

In addition, Matthew Sarver, a chemist for the crime lab who was trained and certified in the testing of methamphetamine labs, testified that the evidence in this case indicated that the lab discovered by Officer Lee was used for the red phosphorous method of producing methamphetamine. Mr. Sarver testified that the results of his tests showed iodine and phosphorous on the coffee filters, and he explained that the sludge left on the filters was what is left after methamphetamine has been "cooked." He also stated that tests of the samples taken from the liquid in a plastic bottle showed pseudoephedrine and methanol, and that the liquid appeared to be a "pill soak," which is used in the first stage of manufacturing methamphetamine by combining pills with alcohol. Sarver went on to describe the liquid found in other plastic bottles as organic solvent and acid, both of which are used throughout the process of manufacturing methamphetamine. Ac-

cording to Sarver, tests of samples taken from still another jar showed methamphetamine with an organic solvent. He pointed out that the liquid contained in this jar was actually methamphetamine and that the substance found in the jar is the result of one of the final stages of the manufacturing process.

The State also presented the testimony of Detective Paul Woodruff and Officer Russ Allen, who testified about Saul's previous criminal episodes involving methamphetamine to establish his knowledge of the process of manufacturing methamphetamine and the absence of any mistake in those items being present in Saul's van.

We do not view the fact that Saul was not apprehended in the process of "cooking meth" as being determinative. In *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002), police officers found ingredients for making methamphetamine as well as containers the officers suspected to be involved in the manufacture of methamphetamine at the defendant's home. The defendant was later convicted of manufacturing methamphetamine. He appealed and in a challenge to the sufficiency of the evidence, this court found that the State had "produced sufficient evidence that Stone was indeed manufacturing methamphetamine by means of the necessary ingredients and required apparatus." *Stone*, 348 Ark. at 668, 74 S.W.3d at 595. We held that this was so even though the defendant was not caught in the actual act of manufacturing methamphetamine.

We further note that the case of *Chapman v. State, supra,* is not helpful to Saul. In that case, this court found the evidence to be sufficient to support the defendant's conviction for manufacturing methamphetamine where the state had presented evidence that all of the ingredients, solvents, chemicals, and hardware necessary to manufacture methamphetamine were found on defendant's property, and where the defendant's attempted flight at the scene of the search provided additional evidence of guilt. Saul now contends that the proof introduced in *Chapman* is the standard against which the proof in the instant case must be weighed. We disagree. As already stated, the multiple ingredients and devices used in methamphetamine production which were found together with the by-products of such production and the actual methamphetamine discovered as well as the testimony of the police officers more than suffices as substantial evidence.

Although Saul concludes that the fact no heat source was found in the blue container is significant, the items found in Saul's van could well have been used with a heat source at a different location to produce the methamphetamine. Simply because a heat source was not present in Saul's van does not lead ineluctably to the conclusion that no heat source had been previously used to manufacture methamphetamine. We affirm the circuit court on this point.

## II. Rule 404(b) Witnesses

Saul next claims that the circuit court abused its discretion when it allowed Detective Woodruff and Officer Allen to testify solely for the purposes of establishing prior criminal acts other than the one for which Saul was being tried. Saul specifically asserts that the State called these witnesses solely for the purpose of proving that Saul was a person of bad character in violation of Arkansas Rule of Evidence 404(b).

In connection with this argument, Saul contends that the evidence of other crimes was not admissible at trial because the evidence was not independently relevant to a material issue in the case. Moreover, he maintains that the probative value of that testimony was substantially outweighed by the danger of unfair prejudice in violation of Arkansas Rule of Evidence 403. Saul opines that the evidence of other crimes committed by him and introduced by the State was only offered to show that he had the propensity to possess items associated with methamphetamine and that he was more likely to manufacture methamphetamine. He further maintains that he never testified that he did not know how to manufacture methamphetamine but simply that he was not the owner of the blue container in the back of the van and that he was not manufacturing methamphetamine in this instance.

We review evidentiary matters under an abuse-of-discretion standard. *See McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003). The pertinent rule of evidence in dispute is Rule 404(b), which reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Arkansas Rule of Evidence 404(b) (2005).

In the instant case, the State alleged that it was offering evidence of Saul's prior criminal incidents, because this evidence tended to establish motive, intent, plan, knowledge, and the absence of mistake or accident under Rule 404(b) with regard to Saul's charged act of manufacturing methamphetamine. At the pre-trial hearing on Rule 404(b), the State advised the court that it planned to introduce evidence of prior crimes in order to show Saul's knowledge. The catalyst for doing so was Saul's claim to Officer Lee that the methamphetamine lab found in his van was placed there by someone else and that he had no knowledge of its existence.

In order to find that the evidence of Saul's prior crimes is admissible under Rule 404(b), this court must find that the evidence is "independently relevant, thus having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Cook v. State*, 345 Ark. 264, 270, 45 S.W.3d 820, 824 (2001). Additionally, this court must determine that the evidence was more probative than prejudicial under the Rule 403 balancing test. Thus, if this court determines that the evidence of Saul's prior crimes is independently relevant and that its probative effect is not substantially outweighed by the danger of unfair prejudice, then this court may find the evidence to be admissible.

We believe that the testimony of Detective Woodruff is very significant here, as he explained what Saul said to him upon being caught with at least a partial methamphetamine lab in his vehicle in 1998. Those circumstances, of course, approximate the facts in the instant case. Detective Woodruff stated at trial that when Saul was asked for an explanation of what the officers found in his vehicle in 1998, Saul answered that he was driving along a local creek in Boone County when he came across some juveniles who were manufacturing methamphetamine. Saul claimed that because he knew that methamphetamine was dangerous, he took the items from them, put them in his vehicle, and left the area. Detective Woodruff testified that he tried to get the location of this incident from Saul so he could try to confirm his statement. When Saul was asked, however, why he had spills on top of the hood of his vehicle from where the manufacturing process had been taking place, the interview quickly came to an end.

This testimony is significant, in this court's judgment, because it shows a similar pattern of Saul's criminal activity — or, at

least a similar pattern of how he responds to police officers when he is caught with drug paraphernalia. Two different times when he was caught with articles associated with a methamphetamine lab in his vehicle, he has claimed that they did not belong to him.

Officer Russ Allen also testified about arresting Saul for shoplifting ten boxes of pseudoephedrine tablets from Wal-Mart in 2000. According to Officer Allen, Saul had stuck the ten boxes down in his sweat pants. The police officer also testified that Saul had purchased two cans of starter fluid and acetone. Pseudoephedrine, starter fluid, and acetone are "commonly used" to manufacture methamphetamine, Officer Allen told the jury. Again, we conclude that the combined purchase, and in one instance the theft of, known precursors was pertinent evidence of Saul's knowledge and intent relative to manufacturing methamphetamine.

As a final point, we address whether introduction of the Rule 404(b) witnesses' testimony was a proper part of the State's case-in-chief. Saul contends that it should not have been used in the State's case-in-chief but only as rebuttal evidence after Saul testified that the blue container was not his and that he had not seen it before. We disagree.

Because Saul told Officer Lee at the time of his arrest that he had no knowledge that the blue container was in his van, it was clear that this was his defense. Moreover, Officer Lee testified as part of the State's case that this had been Saul's response at the time of the arrest. This court has held that Rule 404(b) evidence is admissible to prove knowledge and intent of the criminal defendant due to similar conduct. *See, e.g., Davis v. State*, 362 Ark. 34, 207 S.W.3d 474 (2005) (similar incident of sexual assault admitted to show intent); *Fells v. State*, 362 Ark. 77, 207 S.W.3d 498 (2005) (victim of similar, but earlier, rape by defendant allowed to prove intent, motive, or plan). In neither of these cases was the State limited to use of this testimony as rebuttal evidence, after the defense had put on its case.

One commentator has discussed the trend in federal circuit courts to allow Rule 404(b) evidence as part of the government's case-in-chief. *See* Vivian M. Rodriguez, *The Admissibility of Other Crimes, Wrongs, or Acts Under the Intent Provision of Federal Rule of Evidence 404(b): The Weighing of Incremental Probity and Unfair Prejudice*, 48 U. MIAMI L. REV. 451 (1993). One point made is that to require the government to wait until the conclusion of the defendant's case may foreclose this proof altogether, if the defendant does not present a defense but simply rests. *Id.* In addition,

where it was apparent before trial that the defendant's intent would be contested, a delay in presenting Rule 404(b) evidence until after the defendant testified has not been required in certain cases. *Id.*

■ We hold that the 1998 judgment for possession of drug paraphernalia after Saul was first charged with manufacturing methamphetamine and the arrest for shoplifting methamphetamine precursors to be independently relevant and sufficiently similar to the charged offense of manufacturing methamphetamine in the instant case. We further hold that these offenses are some proof of knowledge and absence of mistake and that the prejudice resulting from the evidence did not outweigh its probative value.

■ Finally, we hold that the circuit court did not abuse its discretion in allowing this evidence to be introduced as part of the State's case-in-chief. Saul had made it clear that lack of knowledge was his defense at the time of the arrest, and Officer Lee had testified on this point at the pretrial hearing. Similar past conduct supporting Saul's knowledge of the methamphetamine manufacturing process and his shoplifting of methamphetamine precursors was certainly probative of his intent to do so in the instant case and, thus, it was properly admitted as part of the State's case-in-chief. We affirm on this issue.

### III. Police Officers As Experts

Saul next claims that it was an abuse of the circuit court's discretion to allow Officer Lee to describe at trial how methamphetamine is made and whether the components were present to make methamphetamine in the case against Saul as well as how methamphetamine is usually manufactured and what items are present in most cases. Saul specifically maintains that Officer Lee's referral to common household items as "tools of the trade" for manufacturing methamphetamine and to scales as being used to weigh methamphetamine for selling purposes was highly prejudicial to Saul. This, he claims, was completely unnecessary for the jury to understand the evidence, since Saul was not charged with selling methamphetamine. Even if Officer Lee's testimony was relevant, he maintains, it was not necessary to assist the jury, but it only served to confuse and mislead the jurors.

With respect to Detective Woodruff, Saul asserts that his testimony was far more prejudicial to his case. Detective Woodruff was permitted to state that Saul had a methamphetamine lab in 1998, despite the lack of a conviction for that offense at that time,

as the police never made a determination of what certain chemicals were. Thus, Saul contends that Detective Woodruff's expert opinion offered at trial that Saul was cooking methamphetamine in 1998 resulted in excessive and severe prejudice to Saul and this prejudice warrants reversal of his conviction and a new trial.

The State responds that neither Officer Lee nor Detective Woodruff were certified as experts, but, instead, they both testified as to matters where they had specialized knowledge. The State explains that Officer Lee testified about his extensive training in dealing with methamphetamine labs, including training in identifying the components of such labs and the process for manufacturing methamphetamine. Based on that foundation, Officer Lee testified about the role in that process each item discovered in Saul's van played.

The State adds that Detective Woodruff similarly testified about his training and experience with regard to methamphetamine production. He explained that it was because of his training that he was able to recognize the precursors and paraphernalia that are commonly associated with methamphetamine labs. The State explains that it was on the basis of that foundation that Detective Woodruff testified in 1998 about the components of a methamphetamine lab which were found in Saul's vehicle.

The law concerning expert testimony was summarized in a recent case:

> Rule 702 of the Arkansas Rules of Evidence entitled "Testimony of Experts" reads:
>
>> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> This court has held that if some reasonable basis exists demonstrating that the witness has knowledge of the subject beyond that of ordinary knowledge, the evidence is admissible as expert testimony. *Brunson v. State,* 349 Ark. 300, 79 S.W.3d 304 (2002). Whether a witness qualifies as an expert in a particular field is a matter within the trial court's discretion, and we will not reverse such a decision absent an abuse of that discretion. *Jackson v. State,* 359 Ark. 297, 197 S.W.3d 468 (2004); *Brunson,* 349 Ark. 300, 79 S.W.3d 304.

*Flowers v. State,* 362 Ark. 193, 210, 208 S.W.3d 113, 126-27 (2005).

At a pre-trial hearing concerning whether Officer Lee would be qualified as an expert, the circuit judge said this to the prosecutor:

> If I determine that I will let Detective Lee testify, I am not going to rule that he's an expert, I'm just gonna let him testify. In other words, you can ask me to rule that he's an expert, but I'm concerned that that's a comment on the evidence. If I let him I will just say you may proceed in giving testimony.

Additionally, the circuit judge said this to Saul's counsel:

> I'm not going to certify him as an expert. It will be up to the jury whether they accept it or not. I know he has to get by me first, and I will do that. I will rule on that. I'm just not going to in front of the jury say I certify him as an expert.

At trial, upon Saul's objection to Officer Lee's testimony, the following colloquy occurred between Saul's counsel, the prosecutor, and the circuit court:

> DEFENSE COUNSEL: This is where he's talking about the process, and I think he needs to be an expert to do that. I don't think he's qualified as an expert to talk about the process.
>
> PROSECUTOR: Your Honor, he's at the point where he's telling how he cooked, what he cooked, and I can do more, I certainly can do more. But, you know, I think that this is the point where we would do that.
>
> THE COURT: I will overrule the objection to this testimony. It doesn't stop you getting up again. I think he's qualified to start talking. He said he was cooking and he did. I'm going to let him talk about it.

Later during Officer Lee's testimony, Saul continues his objection to Officer Lee being used as an expert to discuss what is commonly used in the process of manufacturing methamphetamine.

█ Based on these discussions between the court and the attorneys, it does not appear that Officer Lee was ever certified as an expert by the circuit court in front of the jury. Nevertheless, the court allowed him to testify as an expert with specialized knowl-

edge under Rule 702. On this point, it is notable that this court has allowed police officers to testify about their experiences in drug cases. *See, e.g., Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998) (holding that the testimony from two police officers about how methamphetamine is packaged and sold was proper in light of the State's burden to prove that the appellant had possessed methamphetamine with the intent to deliver it); *Hicks v. State*, 327 Ark. 652, 941 S.W.2d 387 (1997) (holding that the circuit court did not abuse its discretion when it allowed a police officer who was not qualified as an expert to testify on redirect examination about variations in drug purity levels within certain quantity of methamphetamine, as such testimony constituted, in the officer's experience, commonsensical explanations for why a batch of methamphetamine was not mixed thoroughly). Officer Lee and Detective Woodruff both had specialized knowledge relating to methamphetamine production. We hold that the circuit court did not abuse its discretion in allowing them to testify as experts.

### IV. Exculpatory Evidence

Saul next claims that the circuit court erred in not granting his motion for a mistrial or a continuance as he was prejudiced by the failure of the State to provide him with exculpatory evidence. He explains that while Officer Lee testified at pre-trial hearings that part of the evidence seized had been sent away and disposed of by an environmental agency, Officer Lee revealed at trial that the environmental agency may have retained some of the items. According to Saul, the knowledge of Officer Lee that some of this evidence may have been retained was imputed to the State, which should have placed that evidence in the file so defense counsel could have reviewed and copied it upon examination of the State's file. He contends that had Officer Lee merely submitted the items retained by the environmental agency for fingerprint testing, Saul might have been exonerated of the charges against him. Saul maintains that the prejudice resulting from the circuit court's denial of a mistrial or continuance is overwhelming, especially in light of the fact that the defendant never made any comment about whether this was a methamphetamine lab or not. Saul states that his defense throughout the trial was the container did not belong to him.

We agree with the State and the circuit court that Saul's claim on this point regarding the possibility of exonerating fingerprint evidence is pure speculation. We further agree with the

State that we have held that a defendant cannot merely rely on discovery of the State's evidence as a total and complete substitute for conducting its own investigation. *See Smith v. State,* 352 Ark. 92, 98 S.W.3d 433 (2003). We affirm on this point.

### V. Cross Examination

For his final point, Saul contends that the circuit court abused its discretion by not allowing defense counsel to cross-examine Detective Woodruff about the presence of drug para-phernalia in situations where there was no manufacturing of methamphetamine in progress. Saul concludes that he was denied his right to confrontation of the witnesses under the Sixth Amend-ment of the United States Constitution as well as the Arkansas Constitution.

We refuse to address this issue because it was not preserved for our review. When the prosecutor objected to the defense counsel's question, the court sustained the objection, and defense counsel said, "[o]kay." Defense counsel never objected to this ruling on the basis that it denied Saul his right to confront a witness under the Sixth Amendment or the Arkansas Constitution, or for any other reason. Thus, this issue is not preserved for appeal. *See, e.g., Harris v. State,* 363 Ark. 502, 504, 215 S.W.3d 666, 667 (2005) (stating that "[i]t is a well-settled principle of this court that we will not consider arguments made for the first time on appeal").

Affirmed. Court of appeals reversed.

HANNAH, C.J., concurs.

JIM HANNAH, Chief Justice, concurring. Because the major-ity has held contrary to my view on the admissibility of evidence under Ark. R. Evid. 404 on a number of occasions, I now concur with the outcome of this case. I do so under the doctrine of stare decisis. However, I also state my willingness to revisit this issue in the future.

The longstanding rule arising under the common law that a verdict of guilty should rest upon proof beyond a reasonable doubt that the defendant committed the exact offense for which he or she is tried is now effectively abandoned. In the past, this court held that it was impermissible to prove the commission of one offense by the proof of the commission of another. The holding of the

majority in the present case completes the abandonment of this principle, and as of now, despite statements to the contrary in the majority opinion, evidence of a person's propensity to commit a particular crime is now relevant and admissible to prove guilt by showing conformity with that character attribute on a subsequent occasion. To quote the majority, the testimony regarding the prior conviction and arrest "is significant in this court's judgment, because it shows a similar pattern of Saul's criminal activity. . . ."[1] In other words, contrary to the holdings in earlier cases, because Saul is a man of bad character, and is addicted to crime, his prior bad acts may now be used in the State's case-in-chief to prove guilt of a later similar offense.

I have serious concerns that the interpretation now given Rule 404 by this court violates fundamental requirements of due process and the right to a fair trial under our State Constitution and under the federal constitution. However, the outcome in this case is likely a result of the evidence. This is a hard case because even aside from the character evidence at issue in this appeal, the evidence of guilt is so clear. Justice Oliver Wendell Holmes set out well the difficulty we face in a case such as the present appeal. In his dissent in *Northern Securities Co. v. United States*, 193 U.S. 197, 400-01 (1904), Justice Holmes stated:

> Great cases, like hard cases, make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend.

No one doubts the severe challenge our society faces from methamphetamine. Lives and families are being squandered and lost every day to this drug; however, the right of all persons to a fair trial is at issue, and we should not injure our system of justice to keep one man from being tried a second time.

---

[1] "We have, however, zealously guarded the rights of accused persons to have the State's evidence strictly confined to the issues surrounding the offense charged to insure that no one is convicted because he has committed offenses other than that for which he is on trial or because he is of bad character and addicted to crime." *Akins v. State*, 330 Ark. 228, 235, 955 S.W.2d 483, 487 (1997) (citing *Tarkington v. State*, 250 Ark. 972, 469 S.W.2d 93 (1971)).

I have stated my view on this issue on a number of occasions[2] and now take this opportunity to reassert it as I acquiesce under the principle of stare decisis. The State alleges that it offered the evidence of Saul's prior conviction for possession of drug paraphernalia as well as evidence of his arrest for shoplifting ingredients used in methamphetamine production to establish motive, intent, plan, knowledge and the absence of accident or mistake in the manufacture of methamphetamine, as allowed under Ark. R. Evid. 404(b). The majority concludes that the "catalyst" for attempting to use this evidence "was Saul's claim to Officer Lee that the methamphetamine lab found in his van was placed there by someone else and that he had no knowledge of its existence." The majority correctly states that before the evidence could be admitted under Rule 404(b), the State had to overcome two obstacles: the evidence had to be independently relevant as proof of the crime charged, and the probative value of the evidence had to outweigh its prejudicial harm. The evidence meets neither requirement.

### Independent Relevance

To be independently relevant, the evidence must be relevant to a material issue in the present case. *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004). Stated another way, "the fact that evidence shows that the defendant was guilty of another crime does not prevent it being admissible when otherwise it would be competent on the issue under trial." *Alford v. State*, 223 Ark. 330, 334, 266 S.W.2d 804, 807 (1954) (quoting *State v. Delaney*, 87 Ark. 17, 23, 112 S.W. 158, 160 (1908))[3]. In such a case, even though the evidence may show the commission of another crime, it is admitted under Rule 404(b) as relevant to prove a material issue in the case being tried.

---

[2] *See Swift v. State*, 363 Ark. 496, 215 S.W.3d 619 (2005) (Hannah, C.J., concurring); *Davidson v. State*, 363 Ark. 86, 210 S.W.3d 887 (2005) (Hannah, C.J., concurring); *Davis v. State*, 362 Ark. 34, 207 S.W.3d 474 (2005) (Hannah, C.J., dissenting); *Fells v. State*, 362 Ark. 77, 207 S.W.3d 498 (2005) (Hannah, C.J., dissenting); *McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003) (Hannah, J., concurring).

[3] While *Alford v. State*, 223 Ark. 330, 334, 266 S.W.2d 804 (1954), discusses the earlier common-law rule, in *Evans v. State*, 287 Ark. 136, 140, 697 S.W.2d 879 (1985), *rev'd on other grounds by Walker v. State*, 304 Ark. 393, 805 S.W. 2d 502 (1991), this court stated: "In *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954), we thoroughly discussed the purposes and application of the common law equivalent of Rule 404." The court of appeals stated that "Rule 404(b) is virtually a codification of Alford and the cases following it." *Tharp v. State*, 20 Ark. App. 93, 96, 724 S.W.2d 191, 192 (1987).

On the issue of independent relevance, the majority holds in this case that the evidence of Saul's prior commission of similar acts was admissible under Rule 404(b) because it was "pertinent evidence of Saul's knowledge and intent relative to manufacturing methamphetamine." Therefore, according to the majority, Saul's propensity for manufacturing is relevant to show intent in the present case.

The majority is clearly relying on Saul's propensity, because as already noted, the majority states that the prior purchase and theft of precursors show a "similar pattern of Saul's criminal activity," particularly with respect to how he responds to police when caught with "drug paraphernalia." The argument accepted by the majority is that as a person who previously possessed drug paraphernalia and shoplifted items often used in methamphetamine production, Saul is more likely to manufacture drugs. Therefore, the evidence was allowed to show Saul's behavioral patterns, or in other words his character trait to commit drug offenses. However, under our longstanding law on the issue, evidence of a person's character or a character trait is not admissible to prove he or she acted in conformity therewith on a particular occasion. Ark. R. Evid. 404(a).

With respect to intent, the State had to prove that Saul knowingly or purposely manufactured methamphetamine.[4] The majority holds that the evidence shows "knowledge" without explaining what it means by "knowledge," and, as already noted, the majority states that Saul claimed to have no knowledge of the existence of the lab in his van. What is at issue is whether Saul knowingly or purposely manufactured the methamphetamine, not whether he knew the lab was in his van. Manufacturing is producing or processing a controlled substance.[5] The evidence of

---

[4] No required culpable mental state is provided for in Ark. Code Ann. § 5-64-401 (Supp. 2001), under which Saul was charged and; therefore, under Ark. Code Ann. § 5-2-203(b) (Repl. 1997), the State had to prove that Saul acted "purposely, knowingly or recklessly."

[5] "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis. . . .

Ark. Code Ann. § 5-64-101(m) (Repl. 1997).

prior crimes is not independently relevant on this material point in the present case. It does not show that he produced or processed drugs on this occasion.

The error in this case arises from misinterpretation of Rule 404(b). Rule 404(b) provides:

> (b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b) includes an illustrative list of issues on which evidence might be admissible, if those issues are relevant in the case being tried. However, the list is not exhaustive,[6] and just because Rule 404(b) notes that evidence may be admissible, on opportunity, for example, does not mean the evidence is admissible if opportunity is not at issue in the case being tried. In recent years, analysis on a Rule 404(b) has often been reduced to noting that Rule 404(b) allows admission of evidence of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" and then finding the evidence "independently relevant" and admissible because it relates to one or more of the listed issues.

Under Rule 404(b), the evidence must be relevant to prove a material issue in the case being tried. What had to be proven in the present case was knowing and purposeful manufacture of methamphetamine. Motive, opportunity, preparation, plan, identity, or absence of mistake or accident simply are not at issue. Surely the State did not want to put on the evidence of the prior crimes because it was concerned that the jury might conclude that Saul mixed up some chemicals he had around the house and accidentally made methamphetamine.[7] The danger in allowing blanket admission of evidence based on general relevance to issues, such as motive, was set out long ago in *Howard v. State*, 72 Ark. 586, 82 S.W. 196 (1904), where this court wrote:

---

[6] *See Lindsey v. State*, 319 Ark. 132, 890 S.W.2d 584 (1994).

[7] While the State generally may introduce any relevant evidence to prove its case as conclusively as it can, that right does not extend to evidence excluded by Ark. R. Evid. 403. *Ferguson v. State*, 362 Ark. 547, 210 S.W.3d 53 (2005).

No rule of criminal procedure is better established, perhaps, than that evidence of one crime shall not be permitted in proof of another. Even where offenses are alike, evidence of one is not, generally speaking, competent to prove the other. "To permit such evidence," says Mr. Bishop,[8] "would be to put a man's whole life in issue on the charge of a single wrongful act; and crush him by irrelevant matter which he could not be prepared to meet." Mr. Wharton declares that it is a violation of the fundamental sanctions of our law to admit evidence that the defendant committed one offense in order to prove he committed another. Wharton Cr. Ev. § 48. But whatever tends directly to prove a man guilty of the crime charged, though it shows him also guilty of another crime, may be given in evidence against him. 1 Bishop, New Cr. Pro. § 1123; Clark, Cr. Pro. p. 517. Where guilty knowledge or intent is an essential ingredient of the offense charged, evidence which has a direct bearing on such knowledge or intent, or which tends to establish it, is admissible, although apparently collateral and foreign to the main subject. 1 Greenleaf, Ev. § 53; 1 Bishop, Cr. Proc. § 1126; Clark, Cr. Pro. p. 518; Wharton, Cr. Ev. §§ 31 to 46.

When there is a question as to whether or not the crime charged was by accident or mistake, or intentional and with bad motive, the fact that such act was one of a series of similar acts committed by the defendant is admissible, because it tends to prove system and show design. Clark, Cr. Pro. p. 517; Wharton, Cr. Ev. (8th Ed.) §§ 31 to 46. *But it must be remembered always that such evidence is admissible only for the purpose of showing particular intention, knowledge, good or bad faith, when these are in issue, and essential to constitute the crime. It is never admitted to show that the defendant was likely to commit the crime for which he is being tried.*

*Howard*, 72 Ark. at 597-98, 82 S.W. 196, 200-01 (emphasis added).

In the present case, the majority uses the phrase, "knowledge and intent." What knowledge is referred to is unclear. The evidence is not relevant for any purpose other than showing Saul's propensity or character trait to commit drug offenses. The evidence was not admissible as independently relevant to prove a material issue in the present case.

---

[8] Joel Prentiss Bishop, *1 New Criminal Procedure* § 1124(3) at 697 (1895).

*Rule 403*

Even if the evidence is relevant and meets the requirements of Rule 404(b), it may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, if it confuses the issues, or if it misleads the jury. *Wyles v. State*, 357 Ark. 530, 182 S.W.3d 142 (2004). On this issue, the majority simply concludes that "the offenses are some proof of knowledge and absence of mistake and that the prejudice resulting from the evidence did not outweigh its probative value." Further analysis is needed.

The circuit court recognized the highly prejudicial nature of the evidence, noting that, "[o]bviously, if the State succeeds in getting this in, it ties — it ties things up for the State. I mean that it's devastating evidence." The State apparently recognized at the least that Saul would consider the evidence prejudicial as is evidenced by the State bringing the issue to the circuit court's attention in a pretrial motion requesting to be allowed to use it in its case-in-chief.

This court has recognized that any reference to a defendant's prior convictions during the guilt phase of a criminal trial results in at least some prejudice to the defendant. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003). In fact, where the evidence of prior criminal acts is not relevant, it has been held to be sufficiently prejudicial to require reversal. *See, e.g., Elliott v. State*, 335 Ark. 387, 984 S.W.2d 362 (1998). This is because by using the evidence, the State labels the defendant as a habitual criminal from the commencement of the State's case, "thus removing one of the constitutional benefits afforded all criminal defendants in a criminal case — a right to a fair and impartial jury." *Elliott*, 335 Ark. at 392, 984 S.W.2d at 365.

In *Miller v. State*, 239 Ark. 836, 838, 394 S.W.2d 601, 602 (1965), this court considered the question of "whether the action of the trial court in permitting the previous convictions to be called to the attention of the jury deprived the defendants of a fair trial within the meaning of the U.S. Constitution, Amendments 5, 6, and 14." In *Miller, supra,* this court quoted *Michelson v. United States*, 335 U.S. 469, 475-76 (1948):

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of

his guilt. Not that the law invests the defendant with a presumption of good character, *Greer v. United States*, 245 U.S. 559, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Miller*, 239 Ark. at 838-39, 394 S.W.2d at 602-03. In *Miller*, we reversed and remanded the case holding that the mention of the prior convictions constituted a denial of due process. In the case before us, the admission of the evidence denied Saul a fair trial and violated his due process rights. The prejudicial harm clearly outweighed any probative value, and the only purpose in admitting the evidence was to show that Saul was a man of bad character and that he was addicted to crime.

Over the last few years, this court has so modified the rule on admission of evidence under Rule 404 as to nullify its intent and effect, and this decision is the logical final step in complete abandonment of the rule, as well as abandonment of the longstanding common-law principle that a person should be convicted of the exact offense committed. I continue to disagree; however, under the doctrine of stare decisis, I concur.