SLIP OPINION

Cite as 2015 Ark. App. 37

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-14-449

| | | |
|---|---|---|
| JANET TANKERSLEY | | **Opinion Delivered** January 28, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR- 2013-438] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MICHAEL MEDLOCK, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

### RITA W. GRUBER, Judge

Janet Tankersley brings this appeal from her conditional guilty plea to first-offense driving while intoxicated.[1] She contends that the circuit court erred in denying her pretrial motion to suppress evidence of her intoxication because an informant's uncorroborated tip about Tankersley's illegal behavior was not sufficiently reliable to give the arresting officer reasonable suspicion to pull her over. She argues that the officer did not have reasonable suspicion to make an investigatory stop under our rules of criminal procedure. We find no error, and we affirm the conviction.

When reviewing the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, recognizing the trial court's superior

---

[1] "With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, . . . to review an adverse determination of a pretrial motion to suppress seized evidence . . . ." Ark. R. Crim. P. 24.3(b)(i) (2014).

opportunity to determine witnesses' credibility and reversing the findings of historical fact only when they are clearly erroneous. *Batchelor v. State*, 2014 Ark. App. 682, ___ S.W.3d ___.

At 3:54 p.m. on November 11, 2012, an Arkansas State Police dispatcher took a call from a motorist traveling west on Interstate 40 near Fort Smith, who said that a silver Toyota pickup in front of him was repeatedly "riding the rumble strip." The dispatcher logged in the call as a possible DWI. The motorist told the dispatcher his name—Barry Gray—and phone number, said that he was driving a black Jeep, and reported the Toyota's tag number. Gray stayed on the phone with dispatch and followed the pickup on the interstate until a state patrolman made contact with it.

Gray testified at the hearing on the motion to suppress, explaining that he made the phone call after observing the vehicle in front of him:

> [I]t would go from one lane to the shoulder of the road, driving down the rumble strip for extended periods of time. Then it would correct, then it would go back and cross to the other lane without signals or anything, and it would drive down the other rumble strip. Yes, on more than one occasion. After watching it go on for several minutes, several occasions, I contacted law enforcement.

Gray testified that he continued his drive home after seeing the officer make contact with the pickup.

Trooper Sam Bass testified that he was at headquarters when dispatch relayed the motorist's call that he was in a black Jeep following a Toyota pickup "that appeared to be all over the road or intoxicated." Trooper Bass drove to the crossover at the 9-mile marker, where he observed the two vehicles passing by. He pulled out, got behind the pickup,

and—without personally observing any traffic violations—made the traffic stop in another mile or two.

Arkansas Rule of Criminal Procedure 3.1 (2014) authorizes a law enforcement officer who is lawfully present in any place to,

> in the performance of his duties, stop and detain any person who he *reasonably suspects* is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

(Emphasis added.) An investigatory stop is lawful when, considering the totality of the circumstances, an officer acts on particularized and objective reasons indicating that the person may be involved in criminal activity. *See Mosley v. State*, 2009 Ark. App. 799, at 4, 370 S.W.3d 273, 275. Arkansas Rule of Criminal Procedure 2.1 (2014) defines reasonable suspicion as

> a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

In *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998), a truck driver phoned the Springdale Police Department and provided the dispatcher with his name, address, and occupation. The caller stated that he had observed an elderly male in a red Volvo tractor-trailer drinking beer in the cab of his vehicle in the commercial-truck parking lot behind McDonald's. *Id.* at 106, 959 S.W.2d at 735. Officer Kwano responded to the dispatch and discovered Frette behind the wheel inside a red tractor-trailer parked behind McDonald's. *Id.* Officer Kwano approached, ordered Frette to step out of the vehicle, and

noticed the strong smell of intoxicants on Frette, who swayed as he spoke. *Id*. Our supreme court used a three-factor approach to determine the reliability of a citizen informant's report: (1) whether the informant was exposed to possible criminal or civil prosecution if the report is false; (2) whether the report is based on the personal observations of the informant; and (3) whether the officer's personal observations corroborated the informant's observations. *Id*. at 118, 959 S.W.2d at 741. Under the first factor, the *Frette* informant's tip received a high ranking on reliability—above that of an anonymous caller or a confidential informant from the "criminal milieu"—because he identified himself by name, address, and occupation, exposing himself to potential prosecution for making a false report. *Id*. at 121, 959 S.W.2d at 743. Second, the informant personally observed the alleged criminal activity, providing a basis for knowledge of the tip. *Id*. Third, the informant's report was substantially corroborated by the officer's own observations: he quickly arrived at the specified location and observed the vehicle as described with an older man sitting in the cab. *Id*. The *Frette* court concluded that, under the totality of the circumstances, the informant's tip carried with it sufficient indicia of reliability to justify an investigatory stop under Rule 3.1. *Id*.

In a recent case, where a 911 caller was run off the road by another vehicle, the Supreme Court used a "commonsense approach" that certain dangerous driving behaviors are "sound indicia of drunk driving." *Navarette v. California*, 134 S. Ct. 1683, 1690 (2014). A reliable tip for dangerous driving behaviors such as "weaving all over the roadway," crossing the center line and nearly causing head-on collisions, "driving all over the road and weaving back and forth," and "driving in the median" would generally justify a traffic stop for

SLIP OPINION

suspicion of drunk driving. *Id*. at 1690–91 (citations and some internal punctuation omitted); *accord Hoay v. State*, 348 Ark. 80, 83, 71 S.W.3d 573, 575 (2002) (weaving across lines for a substantial distance would constitute reasonable suspicion of DWI); *Piercefield v. State*, 316 Ark. 128, 133, 871 S.W.2d 348, 351 (1994) (weaving from highway's center line to shoulder at late hour gave officer reasonable suspicion). An officer who already has reasonable suspicion of drunk driving need not personally observe suspicious driving. *Navarette*, 134 S. Ct. at 1691, (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)) (repudiating the argument that "reasonable cause for a[n investigative stop] can only be based on the officer's personal observation"). Furthermore,

> [o]nce reasonable suspicion of drunk driving arises, the reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. This would be a particularly inappropriate context to depart from that settled rule, because allowing a drunk driver a second chance for dangerous conduct could have disastrous consequences.

*Navarette*, 134 S. Ct. at 1691–92 (citation and quotation marks omitted).

We now turn to the present case and the reliability of the tip from the citizen informant. Under the first factor of *Frette*, the tip ranks high in reliability: Gray identified himself by name, phone number, and vehicle—thus exposing himself to possible prosecution for a making false report. The second *Frette* factor is satisfied because the report to law enforcement was based on Gray's personal observation of illegal activity. *See also Navarette*, 134 S. Ct. at 1689 (noting that an informant's contemporaneous report of suspicious activity "has long been treated as especially reliable"). As for the third *Frette* factor—the officer's corroboration of the informant's report—Gray's vehicle and the vehicle that he said was

weaving across the road were observed by Trooper Bass at the location Gray described. An officer need not observe a particular traffic violation to support reasonable suspicion. *Navarette* at 1691; *Frette*, 331 Ark. at 121, 959 S.W.2d at 743. In sum, Trooper Bass was not required to personally observe Tankersley's erratic driving in order to form a reasonable suspicion of drunken driving and to pull her over.

As a final note, we agree with the State that Tankersley's reliance on *Nottingham v. State*, 29 Ark. App. 95, 778 S.W.2d 629 (1989), is misplaced. In that case, where the owner of a Travel Mart alerted police to a "possible DWI" suspect seen driving a red Ford pickup in a parking lot, the citizen informant's conclusory allegation was merely the catalyst for further investigation by the officer. *Id*. Reasonable suspicion was found from the one factor reported by the store owner combined with the officer's independent observations of the appellant asleep in the parked truck, a beer between his legs, and the truck's motor still running; the officer's inability to awaken appellant by tapping on the window; the strong odor of intoxicants when the officer opened the door; and the appellant's incoherence. *Id*. at 101, 778 S.W.2d at 632. In the present case, under the common-sense approach of *Navarette* and the three-factor analysis of *Frette*, Gray's tip about Tankersley's illegal behavior was sufficiently reliable to give Trooper Bass reasonable suspicion to pull her over on suspicion of driving while intoxicated.

We affirm the circuit court's denial of Tankersley's motion to suppress.

Affirmed.

KINARD and BROWN, JJ., agree.
*Candice Settle*, for appellant.
*Dustin McDaniel*, Att'y Gen., by: *Christian S. Harris*, Ass't Att'y Gen., and *Trae Norton*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the supervision of *Darnisa Evans Johnson*, for appellee.