SLIP OPINION  Cite as 2017 Ark. App. 466

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-16-1105

| | |
|---|---|
| MATTHEW REAGAN COGER<br><div align="right">APPELLANT</div> | **Opinion Delivered** September 20, 2017 |
| | APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. 44CR-15-100] |
| V. | |
| | HONORABLE MARK LINDSAY, JUDGE |
| STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | AFFIRMED IN PART; REVERSED IN PART |

## PHILLIP T. WHITEAKER, Judge

Appellant Matthew Coger was found guilty by a Madison County jury of multiple felony and misdemeanor counts: manufacture of methamphetamine (a Class C felony); possession of drug paraphernalia to manufacture methamphetamine (a Class B felony); possession of drug paraphernalia to ingest methamphetamine (a Class D felony); being a felon in possession of a firearm (a Class D felony); and acquisition of ephedrine/pseudoephedrine (a Class A misdemeanor). He received an aggregate sentence of twenty-nine years in the Arkansas Department of Correction. On appeal, he challenges the sufficiency of the evidence supporting each conviction. In addition, he raises three other points for reversal, contending that the circuit court erred in (1) denying his motion for mistrial made in response to allegedly improper prosecutorial commentary during closing arguments; (2) refusing to allow



Coger to introduce a recently issued state identification card into evidence; and (3) allowing the State to introduce, pursuant to Arkansas Rule of Evidence 404(b), evidence of Coger's prior methamphetamine-related conviction. We affirm on all points except Coger's misdemeanor conviction for acquisition of ephedrine/pseudoephedrine, on which we reverse.

## I. *Sufficiency of the Evidence*

In what is actually his fourth and final point on appeal, Coger challenges the sufficiency of the evidence supporting each of his convictions. We must consider a challenge to the sufficiency of the evidence prior to a review of alleged trial errors due to double-jeopardy considerations. *Ressler v. State*, 2017 Ark. App. 208, 518 S.W.3d 690. In assessing the sufficiency of the evidence supporting Coger's criminal convictions, we consider only the proof that supports the verdict. *Davis v. State*, 2015 Ark. App. 234, 459 S.W.3d 821. We view that evidence and all reasonable inferences deducible therefrom in the light most favorable to the State, and we will affirm if the finding of guilt is supported by substantial evidence. *Id*. Evidence is substantial if it is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without requiring resort to speculation or conjecture. *Id*. With the standard of review in mind, we will discuss each of Coger's arguments on appeal along with the testimony and evidence that were introduced during trial.

A.  Manufacture of Methamphetamine and Possession of Drug Paraphernalia to Manufacture Methamphetamine

In his first subpoint challenging the sufficiency of the evidence, Coger addresses two of his convictions: those for (1) manufacturing methamphetamine and (2) possession of drug paraphernalia to manufacture methamphetamine. Coger argues that the State failed to prove that he was the person who knowingly or purposely manufactured methamphetamine or possessed the paraphernalia to manufacture methamphetamine. We disagree.

Viewing the evidence in the light most favorable to the State, we set forth the testimony and evidence presented at trial as follows. Chief Mike Harp of the Boston Mountain Solid Waste District was conducting an investigation of purported illegal burning in May 2015 at 192 Madison 5387. As he walked over the property, Harp saw several burn piles or burn barrels that gave him pause. Harp also detected a chemical odor around the burn area. Because he had training in the area of recognizing chemical spills on soil and in vegetation, Harp suspected a methamphetamine lab, and he notified law enforcement.

The Madison County Sheriff's Office obtained and executed a search warrant at 192 Madison 5387, focusing primarily on a pink trailer located on the premises.  In the curtilage of the pink trailer, officers searched around a burn barrel and recovered pseudoephedrine packages, the inside of a stripped portion of a battery, lighter fluid, an HCL generator, muriatic acid, Coleman fuel, a Pyrex pie plate, and coffee filters. Inside the trailer, officers found a methamphetamine pipe, syringes, a spoon, plastic baggies, a straw with white residue, a digital scale, syringes, tubing, starter fluid, a funnel, wet coffee filters, and a "wet ball of goo."

SLIP OPINION

Russell Alberts, a criminal-investigation sergeant with the sheriff's office and a certified methamphetamine-lab technician, helped execute the search warrant. He described some of the ingredients necessary to manufacture methamphetamine: pseudoephedrine, a solvent such as lye, lithium batteries, and an HCL generator to help convert the methamphetamine gas to a solid. Alberts also testified that the wet coffee filters found in the pink trailer indicated that the cook would have been "fairly recent, within a twelve-hour period or less." Additionally, a forensic drug chemist from the state crime lab testified that the material and residue found in the assorted paraphernalia was, in fact, methamphetamine.

Under Arkansas Code Annotated section 5-64-423(a)(1)–(2) (Repl. 2016), it is unlawful for a person to manufacture methamphetamine, and a person who manufactures methamphetamine in an amount less than two grams by aggregate weight, including an adulterant or diluent, upon conviction is guilty of a Class C felony. The above-described evidence is sufficient to show that methamphetamine was manufactured. Under Arkansas Code Annotated section 5-64-443(b), a person who possesses drug paraphernalia with the purpose to use the drug paraphernalia "to . . . manufacture . . . a controlled substance that is methamphetamine . . . upon conviction is guilty of a Class B felony." On this charge, the evidence likewise clearly showed that numerous items necessary for the process of manufacturing methamphetamine were found in the trailer, in violation of Arkansas Code Annotated section 5-64-443(b). The issue presented on appeal is whether the State proved that Coger was the person responsible for the manufacturing process.

During the search of the inside of the pink trailer, officers found an Arkansas identification card belonging to Coger that was valid from December 2011 through December 2015. The address on the identification card was that of Coger's brother's house, which was located across the street. Officers then began to question Coger's brother, Mark Turner. Turner testified that no one lived in the pink trailer, but Coger would come out and stay in the pink trailer "here and there." Turner's testimony that no one lived in the pink trailer was corroborated by Coger's sister, Lavena Epling. She said that the pink trailer was used as a storage house and that no one lived there. Lavena stated that Coger would come out to visit from time to time, but she never really kept up with his visits. She did testify, however, that she assumed that Coger had stayed in the pink trailer the night before the trailer was searched because he had been in her house when she went to bed; she fixed Coger breakfast the next morning; and Coger drove their mother's car to a job site, where he was arrested. Following his arrest, Coger gave a statement in which he denied staying at the trailer where the methamphetamine lab had been discovered, reported that he had been staying in Springdale, and claimed that there was nothing in the pink trailer that belonged to him.

Coger argues that the foregoing evidence is insufficient to convict him. He cites the testimony that indicated he did not frequent the pink trailer where the methamphetamine lab was found; that no one lived there; and that his identification card, which had been found in the trailer and was one of the few things definitively linking him to the trailer, was an old one that he had lost. Coger describes the testimony and evidence as "weak circumstantial

evidence" of his involvement with the methamphetamine lab. Circumstantial evidence, however, can be sufficient to sustain a conviction when it excludes every other reasonable hypothesis consistent with innocence. *Ashley v. State*, 2012 Ark. App. 131, 388 S.W.3d 914. While Coger argues that this evidence does not exclude every other reasonable hypothesis, we disagree. More importantly, the question of whether the circumstantial evidence excludes every hypothesis consistent with innocence was for the jury to decide. *Id.*

We find Coger's argument unpersuasive. Lavena's testimony placed Coger in the trailer the night before his arrest, and the wet coffee filters and the "wet ball of goo" discovered after his arrest indicated that methamphetamine had been recently cooked there. In addition to this evidence, law enforcement also found Coger's identification card in the midst of where the manufacturing process occurred. We affirm on these counts.

## B. Felon in Possession of a Firearm

Coger next challenges the sufficiency of the evidence supporting his felon-in-possession conviction. Pursuant to Arkansas Code Annotated section 5–73–101(a)(1), no person who has been convicted of a felony shall possess or own any firearm. A "firearm" is "any device designed, made, or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use." Ark. Code Ann. § 5-1-102(6)(A). The parties stipulated at trial that Coger is a convicted felon.[1] The only issue of contention was whether Coger possessed a firearm.

---

[1]Coger pled guilty to possession of a controlled substance with intent to manufacture methamphetamine in 2008.

On this point, Coger maintains that the only evidence tending to show that he possessed a firearm was an undated photograph taken from his cell phone showing him holding "some sort of gun." We disagree that the undated photograph was the only evidence.

After law enforcement had executed the search warrant, Captain Robert Boyd of the Madison County Sheriff's Office went to arrest Coger on some outstanding warrants.[2] Because Coger was under physical arrest on those outstanding warrants, Captain Boyd impounded Coger's vehicle and conducted an inventory search. Among the items found during the inventory were two .22-caliber shotgun shells. Coger then consented to a search of three cell phones, which produced a photograph of Coger holding a rifle and another individual holding a dead snake. John Epling, Coger's brother-in-law, was identified as the other individual depicted in the photograph. John Epling testified that he and his wife moved to Madison County in March 2015. Epling testified that the photo was taken after an incident with the snake and his son. His sworn testimony was that the gun in question was a BB gun. Officer Alberts, however, testified that the gun was a .22 rifle.

Admittedly, Epling's and Alberts's testimony as to the nature of the gun was in conflict. This discrepancy, however, was a question for the jury to resolve. *See Sorum v. State*, 2017 Ark. App. 384, at 7, ___ S.W.3d ___, ___ (noting that it is the jury's duty to resolve conflicting testimony and determine the credibility of witnesses). The weight of the evidence and credibility of the witnesses are matters for the fact-finder, not for the trial court

---

[2]These outstanding warrants were unrelated to the charges or convictions in this appeal.



on a directed-verdict motion or this court on appeal. *Simpkins v. State*, 2010 Ark. App. 723.

In addition, it is true that the photograph was undated. Both John and Lavena Epling testified, however, that they moved to Madison County in March 2015. Thus, the jury could have reasonably concluded that the photograph had to have been taken after that point in time. We therefore hold that substantial evidence supports Coger's felon–in–possession conviction.

### C.  Acquisition of Ephedrine/Pseudoephedrine

Coger next argues that the evidence was insufficient to support his misdemeanor conviction for violating Arkansas Code Annotated section 5-64-1103(f)(1). This statute provides that it is unlawful for a person "to knowingly purchase, acquire, or otherwise receive in a single transaction . . . [m]ore than three (3) packages of one (1) or more products that the person knows to contain ephedrine, pseudoephedrine, or phenylpropanolamine, or their salts, isomers, or salts of isomers."

Coger argues that the only evidence introduced on this matter was the testimony of John Epling, whose abstracted testimony is as follows:

> I bought Coger some Sudafed. I bought five boxes, but I didn't buy all five at one time. I did not buy them all at one time. . . . You cannot go purchase five boxes at one time. [As] I stated [in my statement to police], "Matt and I went to Missouri to purchase a box of pills from Wal–Mart and then went and picked up another box of pills for him at Harps in Springdale. And then two more in Fayetteville at Colliers Drug, then one more at Harps." . . . Looking at my statement, it doesn't say anywhere that I purchased all the pseudoephedrine at one time. I bought these boxes over a time period of a few months or so. . . . I bought the boxes over a time period. I'd buy one one week and a week later I'd buy another. I'm not exactly sure when. I did not buy all five roughly at the same time.

Coger is correct when he states that this is the only evidence of when the pseudoephedrine was purchased.[3] The State nonetheless dismisses his argument by suggesting that the jury was free to believe or disbelieve Epling's testimony.

We disagree with the State. Conviction under this statute requires the State to prove that Coger "knowingly purchase[d], acquire[d], or otherwise receive[d] *in a single transaction* . . . . [m]ore than three (3) packages" of ephedrine or pseudoephedrine. Ark. Code Ann. § 5-64-1103(f)(1) (emphasis added). It is a fundamental principle of criminal law that the State has the burden of proving the defendant guilty beyond a reasonable doubt. *Thornton v. State*, 2014 Ark. 157, at 14, 433 S.W.3d 216, 224. The only evidence on this point was Epling's testimony that the pseudoephedrine had been purchased over multiple transactions that were spread out in time; further, nothing in his testimony indicated that he gave the boxes of pills to Coger in a single transaction. Thus, the only evidence presented by the State on this point failed to satisfy its burden of proof. We must therefore reverse Coger's conviction for acquisition of ephedrine/pseudoephedrine.

D.  Possession of Drug Paraphernalia to Ingest Methamphetamine

Finally, Coger argues that there was insufficient evidence to convict him on the charge of possession of drug paraphernalia to ingest methamphetamine. A person who possesses drug paraphernalia with the purpose to use the drug paraphernalia to inject, ingest,

---

[3]We note that Coger admitted in a statement to law enforcement that he had purchased pseudoephedrine because he suffered from allergies, and the search of Coger's cell phone revealed text messages between Coger and another individual discussing "getting some eggs," which Officer Alberts explained was common parlance in drug circles for pseudoephedrine. However, there is nothing in either the statement or the text messages that relate to when the pseudoephedrine was purchased.

inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter upon conviction is guilty of a Class D felony if the controlled substance is methamphetamine. Ark. Code Ann. § 5-64-443(a)(2).

As previously discussed, Captain Boyd impounded the vehicle driven by Coger after his arrest on outstanding warrants and conducted an inventory search. In the course of the inventory search, Boyd found some spoons, a bottle of pills, and a blister pack from a package of pseudoephedrine. In addition, Boyd discovered a filter that had been removed from a cigarette, which was significant to Boyd because "often people who shoot methamphetamine use a spoon and filter off the cigarette to draw their liquid through." Lastly, Boyd also found "a glass vial with some type of substance or residue inside." Coger acknowledges that the glass vial was found in the vehicle that he was driving; nonetheless, he argues that there was no proof presented that he had any knowledge of the vial or that he exercised care, management, or control over it in any way. He also introduced the testimony of Misty Murphy, his girlfriend, who stated that it was her vial and that she had put it in the vehicle.

We find Coger's arguments unpersuasive. There was ample evidence that Coger regularly drove the car in which the vial was found: Robert Boyd testified that he had known Coger and his mother for seventeen years and that he knew Coger to drive his mother's car; Lavena Epling testified that Coger was driving their mother's car the day he was arrested; and Russell Alberts testified that Coger had been driving the car that day. No evidence was introduced that indicated anyone other than Coger had been driving that

SLIP OPINION

particular vehicle. Finally, the jury was free to disbelieve Coger's girlfriend's testimony that it was her vial. *See Sorum*, *supra*. We therefore affirm on this point.

## II. *Motion for Mistrial*

In what is actually his first point on appeal, Coger argues that the circuit court should have granted his motion for mistrial. During his closing argument, Coger's attorney referred to the photograph of Coger with the gun and Epling with the dead snake and stated, "The only person in that picture that can speak about it is John Epling, and he's testified that it was an air rifle." When the State gave its rebuttal closing argument, the prosecutor made the following statement:

> Finally, [defense counsel], remarkably enough—I don't know why he has said this, but [he] said that the only person that could identify the gun in that photo was John Epling. That is not true. There is another person in the photo that could identify the gun, and he hasn't done it, but Mr. Alberts has.

Coger immediately moved for mistrial, arguing that the State had impermissibly commented on his right not to testify. The circuit court denied the motion, reasoning that Coger had said in his closing argument that there was only one person who could identify the gun. The court then admonished the jury that a defendant has the absolute right not to testify, and the fact that Coger did not testify was not evidence of his guilt or innocence and under no circumstances should it be considered by the jury in reaching its verdict.

We do not agree with Coger's arguments that the prosecutor's comments amounted to an impermissible comment on his right not to testify and that the circuit court should have granted his motion for mistrial on that basis. A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by

continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Jenkins v. State*, 348 Ark. 686, 75 S.W.3d 180 (2002). Here, Coger opened the door to the State's comment with his own remarks about the identity of the individuals in the photograph. When a defendant opens the door to the State's comments, he cannot complain about it later. *Jones v. State*, 340 Ark. 390, 402–03, 10 S.W.3d 449, 456 (2000) (affirming denial of motion for mistrial where State allegedly improperly commented on defendant's right to not testify, but defendant opened the door to the State's doing so) (citing *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993)).

The circuit court has wide discretion in granting or denying a motion for mistrial, and absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *Elser v. State*, 353 Ark. 143, 114 S.W.3d 168 (2003). In *Boyd v. State*, 318 Ark. 799, 804, 889 S.W.2d 20 (1994), the supreme court stated that "[t]he bottom line on mistrials is that the incident must be so prejudicial that the trial cannot, in fairness, continue." In these circumstances, any prejudice suffered by Coger by the denial of the motion for mistrial was cured by the admonition that was given to the jury. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice cannot be served by continuing the trial. *Thomas v. State*, 2012 Ark. App. 466, at 8, 422 S.W.3d 217, 221–22; *Hudson v. State*, 85 Ark. App. 85, 98, 146 S.W.3d 380, 388 (2004) (affirming the denial of a motion for mistrial because the cautionary instruction given to the jury helped to cure any prejudice resulting from the admission of objectionable Rule 404(b) evidence); *Kemp v. State*, 335 Ark. 139, 144, 983 S.W.2d 383, 386 (1998) (holding that trial court's admonition to the


jury cured any prejudice from prosecutor's remarks in closing argument). We therefore affirm on this point.

### III.  *Refusal to Admit Identification Card*

In his next point on appeal, Coger challenges the circuit court's ruling on the admissibility of evidence.  Matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court; such a ruling will not be reversed absent an abuse of that discretion nor absent a showing of prejudice, which is not presumed. *Paschall v. State*, 2014 Ark. App. 246, at 3 (citing *McEwing v. State*, 366 Ark. 456, 237 S.W.3d 43 (2006)).

Specifically, Coger assigns error to the circuit court's refusal to allow him to introduce an Arkansas identification card into evidence. Coger attempted to introduce the identification card issued to him in May 2014 in order to rebut the evidence of the identification card found by law enforcement in the pink trailer. Coger took the position that he had lost the identification card that was found by law enforcement in the pink trailer and that he had the May 2014 identification card reissued to replace it. Because the only thing placing him in the pink trailer was the identification card found by law enforcement, Coger argued that it was crucial that the May 2014 reissued card be introduced into evidence. The State objected to the admissibility of the identification card, arguing that it had only been disclosed to the prosecution the previous day and also on the ground that it was not a self-authenticating document. Coger's counsel responded that he had only gotten it from Coger's family the day before and had disclosed it as soon as practicable; he also contended that it was

a self-authenticating document. The circuit court sustained the State's objection on both grounds.

Coger first contends that the circuit court erred in refusing to find that the identification card was a self-authenticating document. Arkansas Rule of Evidence 902 provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to a domestic public document under seal, which is defined as a "document bearing a seal purporting to be that of . . . any state . . . and a signature purporting to be an attestation or execution." Coger cites to no Arkansas authority that a state-issued identification card constitutes a self-authenticating document under Rule 902.

We need not decide whether a state-issued identification card is a self-authenticating document, however, because the circuit court also denied Coger's attempt to introduce the card because it had not been timely disclosed during discovery.[4] On appeal, Coger simply argues that he "disclosed the evidence to the State as soon as practicable after [he] received it and therefore complied with the State's discovery request. The court erred by refusing to admit the defendant's current identification card." Coger cites to no authority on this point. We will not reverse when a point on appeal is unsupported by convincing arguments or sufficient citation to legal authority. *Ressler v. State*, 2017 Ark. App. 208, at 9, 518 S.W.3d

---

[4] If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant thereto, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems proper under the circumstances. Ark. R. Crim. P. 19.7(a) (2016).

690, 695–96; *Watson v. State*, 2015 Ark. App. 721, at 6, 478 S.W.3d 286, 290. We therefore affirm the circuit court's ruling on this issue.

IV.  *Arkansas Rule of Evidence 404(b)*

Finally, Coger argues that the circuit court erred in denying his motion in limine and allowing the State to present evidence of his 2008 conviction for manufacturing methamphetamine.  As a general rule, the State is prohibited from introducing evidence of a defendant's character to prove that he acted in conformity with that character. Ark. R. Evid. 404.  This prohibition excludes the introduction of evidence of other crimes or bad acts to prove the character of the defendant.  However, eight exceptions to the general rule are listed in Rule 404(b). Pursuant to these exceptions, which are frequently referred to simply as "Rule 404(b) evidence," evidence of other crimes or bad acts may be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." To be admissible, Rule 404(b) evidence must satisfy two prongs. First, it must be independently relevant, which means it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Hubbard v. State*, 2017 Ark. App. 93, 513 S.W.3d 289.  Second, to be probative under Rule 403, the prior crime must be similar to the crime charged. *Id*.

This court gives considerable leeway to the circuit court in determining if the circumstances of the prior crimes and the crimes at hand are sufficiently similar to warrant admission under Rule 404(b). *Id*. We have observed that circuit courts have broad discretion

in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Id*. However, the State cannot admit Rule 404(b) evidence simply to show a prior bad act. *Vance v. State*, 2011 Ark. 243, at 20, 383 S.W.3d 325, 339.

At trial, the State introduced Rule 404(b) evidence demonstrating that Coger pled guilty in 2008 to a charge possession of a controlled substance with intent to manufacture. Russell Alberts described the circumstances of that arrest and conviction, saying that he "busted" Coger with a methamphetamine lab in his apartment in 2008. At that time, Alberts found pill soaks, an HCL generator, lithium batteries, and blister packs of pseudoephedrine, as well as paraphernalia for using methamphetamine.

On appeal, Coger argues that the introduction of this Rule 404(b) evidence constituted reversible error because it was introduced solely to prove that he was the sort of person who manufactured methamphetamine—i.e., to prove that he acted in conformity with his prior bad acts. The State responds that no error occurred because the Rule 404(b) evidence of Coger's previous conduct was offered to prove that he possessed knowledge of the manufacturing process.

In *Saul v. State*, 365 Ark. 77, 225 S.W.3d 373 (2006), the supreme court affirmed the circuit court's admission of evidence under Rule 404(b) that the defendant had been previously convicted of manufacturing methamphetamine. In doing so, the court held that the testimony regarding Saul's prior conviction was significant because it showed a similar pattern of Saul's criminal activity. 365 Ark. at 85, 225 S.W.3d at 380. The court in that case also affirmed the introduction of evidence that Saul had previously shoplifted

16

pseudoephedrine; the court held that the theft of known precursors was pertinent evidence of Saul's knowledge and intent relative to manufacturing methamphetamine. *Id*. at 86, 225 S.W.3d at 380.

We find the *Saul* decision controlling. Alberts's testimony about Coger's 2008 conviction was relevant to show a similar pattern of conduct. His testimony about the items found at the time of Coger's 2008 arrest—which were the same types of items that were discovered at the pink trailer in 2015—was similarly relevant to demonstrate Coger's knowledge and intent regarding the manufacture of methamphetamine. We therefore affirm on this point.

Affirmed in part; reversed in part.

GRUBER, C.J., and BROWN, J., agree.

*The Hudson Law Firm, P.L.L.C.*, by: *Grace Casteel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Priest*, Ass't Att'y Gen., for appellee.