RITA W. GRUBER, Chief Judge
Jake Earl Small was charged in the Sebastian County Circuit Court with furnishing a prohibited article, a Class B felony; possessing hydrocodone, a Class C felony; and two counts of possession of drug paraphernalia, Class D felonies. Some of the contraband was found in the car he *518 was driving when Fort Smith police officer Eric Hoegh stopped it for lack of insurance. Prohibited items were also found on Small's person when he was booked and searched at the Sebastian County jail.
Small filed pretrial motions to suppress evidence from his car, which included seven hydrocodone pills in a small baggie, and his statement to Officer Hoegh that the pills were from a friend and that Small took them for his arthritis. After conducting a suppression hearing, the trial court denied the motions by a written order on December 5, 2016.
On December 6, 2016, the State filed an amended criminal information that added the offense "Proximity to certain facilities," based on an allegation that Small possessed a controlled substance, Class C felony or greater, within 1000 feet of the real property of a church. On December 15, 2016, Small filed a pretrial motion to dismiss the "count" of enhanced sentencing or, alternatively, to continue the trial-based in part on a lack of allegation regarding his mental state. The motion was argued on the morning of trial, December 19, 2016, and was denied.
Claire Desrochers, the forensic chemist at the Arkansas State Crime Laboratory who tested seven pills that were found during the search of Small's vehicle, testified at trial that the pills contained 3.6763 grams of hydrocodone and that hydrocodone is a Schedule II drug. Officer Greg Napier of the Ft. Smith Police Department's narcotics unit gave the following testimony. He testified that he reviewed the videotape from the traffic stop, learned its location, and flew his drone to take the photograph introduced as State's exhibit no. 7. He walked along the side of the road past the church property line and up into the church driveway, measuring a total distance of 846 feet. He also measured the straight-line distance as 738.6 feet from the side of the church. The jury found Small guilty of all charges.
Small raises four points on appeal. First, he contends that the trial court erred in denying his motions to suppress. Second and third, he contends that the trial court erred in denying his motion to dismiss the sentencing enhancement of Arkansas Code Annotated section 5-64-411 for possessing the hydrocodone near a church and erred in refusing to give his proffered jury instructions regarding the statute. Fourth, he contends that there was insufficient evidence to support the conviction of violating Arkansas Code Annotated section 5-64-411. We affirm the trial court's decision to deny his motions to suppress and reverse the trial court's conviction for violating Arkansas Code Annotated section 5-64-411 ; the other two points become moot.
I. Whether there Was Sufficient Evidence to Support a Violation of Ark. Code Ann. § 5-64-411[1]
Due to double-jeopardy considerations, we consider a challenge to the sufficiency of the evidence before we address alleged trial errors. Coger v. State , 2017 Ark. App. 466, at 2, 529 S.W.3d 640. In assessing the sufficiency of the evidence supporting criminal convictions, we consider only the proof that supports the verdict. Id. We view that evidence and all reasonable inferences deducible therefrom in the light most favorable to the State, and we will affirm if the finding of guilt is supported by substantial evidence. Id. Evidence is substantial if it is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without requiring resort to speculation or conjecture. Id.
*519 A person is subject to enhanced sentencing of an additional 10-year term of imprisonment if the person "[p]ossesses a controlled substance in violation of § 5-64-419 and the offense is a Class C felony or greater" and "[t]he offense is committed on or within" 1000 feet of the real property of a church. Ark. Code Ann. § 5-64-411(a)(1) & (2)(H) (Repl. 2016). The possession of two grams or more of a Schedule II controlled substance is a Class C felony. See Ark. Code Ann. § 5-64-419. Small repeats on appeal the argument he made in his motion for a directed verdict-that this statute requires proof of a culpable mental state, and the State failed to present evidence that he knowingly or purposely possessed drugs within 1000 feet of a church.
Small also argues that our legislature "never intended that this code provision be applicable to traffic stop cases since the police could manipulate the situation by initiating the traffic stop near one of the listed establishments." We do not address his latter argument because he did not make it to the trial court. A party is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal. Ronk v. State , 2016 Ark. App. 126, at 8, 2016 WL 740271. We now address the sufficiency of the evidence pursuant to Small's directed-verdict motion.
Small notes the provision of Arkansas Code Annotated section 5-2-203(b) (Repl. 2013) that, with certain exceptions, "if the statute defining an offense does not prescribe a culpable mental state, a culpable mental state is nonetheless required and is established only if a person acts purposely, knowingly, or recklessly." (Emphasis added.) He argues that the State failed to address his culpable mental state, a key element of the crime, and that there was no evidence that he was aware of the church's location. He points to State's exhibit no. 7, an aerial photograph taken by drone, showing Trinity Baptist Church "down the street and around the corner of where [he] was stopped." He concludes that because the State did not present evidence that he acted purposely or knowingly, it failed to meet its burden of proof. Small notes the holding of Leeka v. State , 2015 Ark. 183, 461 S.W.3d 331, that because our DWI statute did not contain an express requirement of a culpable mental state, one nonetheless was imputed to the offense through Ark. Code Ann. § 5-2-203. Leeka , 2015 Ark. 183, at 6-8, 461 S.W.3d at 335-36.[2]
The State responds that section 5-2-203 is inapplicable because section 5-64-411, unlike the DWI Act at issue in Leeka , is a sentencing enhancement rather than a statute defining an offense. The State relies on Baumgarten v. State , a case concerning when the State may amend a charge:
It is well settled that an information may be amended up to a point after a jury has been sworn if it does not change the nature of a crime, or create unfair surprise. We have held that an amendment which adds an allegation of habitual offender does not change the nature or degree of the crime. Such an amendment simply authorizes a more severe punishment, not by creating an *520 additional offense or an independent crime, but by affording evidence to increase the final punishment in the event the defendant is convicted.
316 Ark. 373, 379, 872 S.W.2d 380, 384 (1994) (internal citations omitted).
We find a clear distinction between Baumgarten and the present case. Adding a habitual-offender status does not change the elements or nature of the charges or the proscribed conduct. Arkansas Code Annotated section 5-64-411, however, adds an enhanced sentence for a person found guilty of certain offenses, including that for which appellant was convicted, only if an additional requirement is met. That additional requirement is the location where the act is committed. Accordingly, we hold that the circuit court erred in concluding that section 5-64-411 did not require a culpable mental state, and we reverse and remand on this point.
II. Whether the Trial Court Erred in Denying Small's Motions to Suppress
Small contends that Officer Hoegh did not have probable cause to initiate the traffic stop of his vehicle. Hoegh testified that he made the stop on the evening of February 12, 2016, when he was on patrol in the city of Fort Smith:
I came behind Mr. Small's vehicle at the railroad tracks. We were stopped there for a brief moment. I ran the defendant's tag. The vehicle insurance came back to be cancelled. Once ... we started back in motion, I then initiated my blue lights and made a traffic stop on Mr. Small. The traffic stop was about 6:50 p.m. This is a copy of the NCIC return which I got on Mr. Small's vehicle. It shows that the insurance shows cancelled.
I then retrieved his name and date of birth and information. He at the time did not have insurance available. He did not have anything but the policy number. I then returned to my vehicle. I then, just like I do with everyone else, I [ran] his name through the database to get a return on him to know who I'm speaking with. Upon the NCIC return, I got a return and an active warrant out of Little Rock. It was for contempt of court. It also showed that his license was suspended.
While Hoegh was running the computerized NCIC search in his service vehicle, Small located his insurance papers and gave them to an assisting officer who had arrived at the scene.
During cross-examination, Hoegh testified that he had never before seen a printout such as State's exhibit no. 1-entitled "Hoegh ACIC Verification"-and that his computer screen "does not have the initial page." He acknowledged that people whom he had stopped for no insurance sometimes did have insurance and that sometimes he had called within working hours to verify insurance information, but he said that he did not call to verify Small's insurance information due to the active warrant and suspended driver's license. Hoegh explained,
If I pulled you over and you can't find your insurance and you give me your driver's license, I am going to run your driver's license regardless whether or not you find it within a few seconds later based upon my computer telling me you don't have insurance. I'll retrieve the driver's license or the person's name and date of birth, run their information and then if they are able to find their insurance verification, I will tell them to hold it outside the window and I will be up there to get it in a second. Or I will let them call their insurance company and try to get a policy number for their vehicle. Even if you give me your insurance *521 card and driver's license, I still would run the driver's license. I would still investigate the stop with the person I'm coming into contact with, as well as their vehicle insurance information. We still investigate the stop to verify the insurance is valid, and also that their driver's license is valid even though the purpose of the stopping them has been satisfied.
Small complains that Hoegh's computerized search returned unreliable information that Small's insurance was canceled and that Hoegh discovered Small's active warrant for contempt of court by running information through NCIC without giving him sufficient time to produce proof of insurance. He points to the following statement in State's exhibit no. 1, the printout showing that his insurance had been canceled: "The insurance information is provided by the Department of Finance and Administration. Valid insurance policies may exist that are not included in the database at this time." He also argues that even if the stop was legal, Hoegh exceeded the scope of the initial stop before discovering drugs in the car.
In order for a police officer to make a traffic stop, he or she must have probable cause to believe that a traffic violation has occurred. Yarbrough v. State , 370 Ark. 31, 38, 257 S.W.3d 50, 56 (2007). When reviewing the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, recognizing the trial court's superior opportunity to determine witnesses' credibility and reversing the findings of historical fact only when they are clearly erroneous. Tankersley v. State , 2015 Ark. App. 37, at 1-2, 453 S.W.3d 699, 700-01. Probable cause is defined as facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. Lockhart v. State , 2017 Ark. 13, at 5, 508 S.W.3d 869, 873. In assessing the existence of probable cause, the appellate review is liberal rather than strict. Id.
Furthermore, whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was guilty of the violation that the officer believed to have occurred. Travis v. State , 331 Ark. 7, 10, 959 S.W.2d 32, 34 (1998). In Travis , the deputy stopped a truck with a Texas license plate because he mistakenly believed the truck was being operated in violation of the law. Our supreme court affirmed the trial court's denial of the motion to suppress evidence that was subsequently discovered in the truck:
Although the deputy was erroneous, the question of whether an officer has probable cause to make a traffic stop does not depend upon whether the defendant is actually guilty of the violation that was the basis for the stop. As we said in [ Burris v. State , 330 Ark. at 73, 954 S.W.2d at 213, citing Whren v. United States , 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ; State v. Jones , 310 Ark. 585, 839 S.W.2d 184 (1992) ], "all that is required is that the officer had probable cause to believe that a traffic violation had occurred. Whether the defendant is actually guilty of the traffic violation is for a jury or a court to decide, and not an officer on the scene."
The facts of this case are unlike those found in Delaware v. Prouse , 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), which formed the foundation of the Court of Appeals decision in this case. There was no issue of reasonable or probable cause in the Prouse decision because that case involved a "random" traffic stop. We cannot say that Deputy Smith lacked reasonable cause to stop Mr. Travis's truck simply because the *522 truck ultimately was found to have been operated in compliance with Texas law. At the time of the stop, Deputy Smith reasonably, albeit erroneously, believed the license plate was required to display expiration stickers. That the license plate was later found to have been in compliance with Texas law does not mean that the deputy lacked probable cause to make the stop.
331 Ark. at 10-11, 959 S.W.2d at 34-35 (citations omitted).
As part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. Sims v. State , 356 Ark. 507, 514, 157 S.W.3d 530, 535 (2004). During this process, the officer may ask the motorist routine questions such as his or her destination, the purpose of the trip, or whether the officer may search the vehicle, and the officer may act on whatever information is volunteered. Id.
Here, Officer Hoegh believed that Small's car was being operated in violation of our law requiring insurance coverage. We note the following provision of Arkansas Code Annotated section 27-22-104 :
Failure to present proof of insurance coverage at the time of a traffic stop or arrest or a failure of the Vehicle Insurance Database or proof of an insurance card issued under § 23-89-213 to show current insurance coverage at the time of the traffic stop creates a rebuttable presumption that the motor vehicle or the person's operation of the motor vehicle is uninsured.
Ark. Code Ann. § 27-22-104(2)(A) (Repl. 2013) (emphasis added).
We agree with the State that Small's reliability argument is belied by the statutory language that "a failure of the Vehicle Insurance Database ... to show current insurance coverage at the time of the traffic stop creates a rebuttable presumption that the motor vehicle or the person's operation of the motor vehicle is uninsured." Id. The lack of insurance information in the database was sufficient to provide Officer Hoegh with probable cause to believe that a traffic violation had occurred. Hoegh was entitled to rely on the information in his possession at the time of the initial stop, see Travis , supra , and it is irrelevant that Small may have subsequently produced documents showing that he had insurance.
We also agree with the State that the search of Small's vehicle did not exceed the scope of the valid traffic stop. After initiating the stop, Officer Hoegh took Small's driver's license back to his car to run a routine computerized check. Hoegh testified that it is his standard practice to run a computerized NCIC check in a routine traffic stop and that he performed the check while waiting for Small to find his insurance information. Thus, Hoegh's action of running Small's license and criminal history were within the scope of a valid traffic stop. See Sims, supra. The information Hoegh obtained from the NCIC search, that Small had a suspended driver's license and an active warrant for his arrest, provided reasonable suspicion to continue the detention. We affirm the denial of the motion to suppress.
III. Whether the Circuit Court Erred in Denying Small's Motion to Dismiss the Sentencing Enhancement
IV. Whether the Circuit Court Abused its Discretion by Rejecting Small's Proposed Jury Instructions
Both of these points relate to Arkansas Code Annotated section 5-64-411. They *523 are rendered moot by our decision in Part I.
Affirmed in part; reversed and remanded in part.
Virden, Klappenbach, and Whiteaker, JJ., agree.
Harrison and Vaught, JJ., dissent.

Small has not argued insufficiency of the evidence regarding the other charges.

In 2015, in response to the April 2015 Leeka opinion, our legislature explicitly stated its intention to make DWI a strict-liability offense, not requiring proof of a culpable mental state. Tackett v. State , 2017 Ark. App. 271, at 4, 523 S.W.3d 360, 362. The legislature stated in Act 6 that it "intended and still intends to keep driving while intoxicated a strict liability offense." Act 299 added subsection (c) to Ark. Code Ann. § 5-65-103, which provides that "[a]n alcohol-related offense under this section is a strict liability offense."