Cite as 2024 Ark. App. 572

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-24-71

| | |
|---|---|
| CHARLES JALEEL WHITE | Opinion Delivered November 20, 2024 |
| APPELLANT | |
| | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. 66FCR-22-607] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE STEPHEN TABOR, JUDGE |
| | AFFIRMED |

**BART F. VIRDEN, Judge**

Charles Jaleel White appeals his conviction by a Sebastian County Circuit Court jury of trafficking methamphetamine. He argues that the evidence supporting his conviction was obtained from an illegal traffic stop and should have been suppressed. We affirm.

## I. *Relevant Facts*

On Apil 3, 2023, White was charged by criminal information with trafficking methamphetamine (Class Y felony). On November 27, 2023, White moved to suppress the evidence seized from his vehicle pursuant to the stop. He alleged that the traffic stop was made without probable cause; thus, the evidence seized in the subsequent search was erroneously admitted into evidence. In his motion, White alleged that Fort Smith Police Department Officer Lauren Hendrix initiated a traffic stop based solely on the dispatch

report that the insurance for the vehicle he was driving was unverifiable, which is insufficient probable cause to initiate a stop. White contended that the results from the insurance-verification-system search showed only that proof of insurance was "inconclusive," and there was conflicting evidence regarding whether Hedricks conducted the search of the database before or after she initiated the stop. Specifically, White argued that Hendricks could not have run his tags through the database with another car directly behind him and in front of the police officer's car. White characterized this as Hendricks's having made a "conflicting statement" regarding "when she ran the tags, whether it was before she was pulling out." Also, White argued that Hendricks told him "that she [was] going back to her unit to actually run the insurance at that time. This was after the stop had already occurred while she was on the scene. As the evidence shows that the State's presented, the tags were only r[u]n once." Moreover, he argued, on Officer Hendrix's body-cam footage, she can be heard stating that the stop was a "cold" or "cool" stop for the sole purpose of making a drug arrest.

A hearing was held on the motion, and the following testimony and evidence was adduced. On the afternoon of May 25, 2020, Officer Hendrix was parked in a lot near O and 38th Streets in Fort Smith. Charles White drove past Officer Hendrix in a white Mercedes that he had borrowed from a friend. Hendrix recognized the vehicle as belonging to a known drug dealer named Christopher Clem, who had been the subject of a prior narcotics investigation. At 3:39:02 p.m., Hendrix called the police dispatch and asked the communication advisor to run the license plate through the ACIC database. Hendrix learned from the subsequent report that the car's registration had expired, and the insurance

2

information was unverifiable. Hendrix, who had pulled into traffic to follow the Mercedes, turned on the vehicle's blue lights to conduct the stop. Hendrix called into dispatch and reported the stop at 3:39:51 p.m., fifty-one seconds after running the license plate through the database. White pulled over, and Hendrix smelled marijuana as she approached the vehicle. She recognized White, who she knew was a parolee with a warrantless search waiver. Hendrix told White that she stopped him for not having insurance but did not mention the expired registration. White told her his name was Antonio Edward Lee White, and he could not produce a driver's license or proof of insurance. Hendrix took White into custody for criminal impersonation, and then additional police officers searched the vehicle and White. The officers found around one pound of methamphetamine, cash, multicolored pills, and a small amount of marijuana.

The court denied the motion to suppress, finding that before she initiated the stop, Officer Hendrix received the information that the registration had expired, and the auto insurance was unverified; therefore, she had probable cause to stop the car at that time. The court also found that the smell of marijuana emanating from the car indicated a crime was taking place. The court determined that "it doesn't matter if there is a lick of probable cause to search that car because Mr. White had signed a search waiver with—because he was on parole."

A trial was held on December 5. At the close of the State's case, White renewed the motion to suppress, arguing that the stop was pretextual because Hendrix only had the

information that the insurance was unverifiable; thus, any evidence collected pursuant to the stop was the fruit of the poisonous tree. The court denied the motion to suppress.

The jury convicted White of trafficking methamphetamine and sentenced him to forty-five years' incarceration in the Arkansas Division of Correction. White timely filed his notice of appeal, and this appeal followed.

## II. *Discussion*

On appeal, White argues that Officer Hendrix lacked probable cause to initiate a traffic stop based solely on an unverifiable insurance status in the ACIC database. Additionally, White asserts that Hendrix did not testify that she was aware that unverified insurance information pursuant to a check of the online insurance-verification system creates a rebuttable presumption that the driver is uninsured; thus, there was no evidence that Officer Hendrix acted in good faith in conducting the traffic stop. White's arguments are not well taken.

When reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Bathrick v. State*, 2016 Ark. App. 444, 504 S.W.3d 639. A finding is clearly erroneous when, even if there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Prickett v. State*, 2016 Ark. App. 551, 506 S.W.3d 870. We defer to the circuit court's superior position in

4

determining the credibility of the witnesses and resolving any conflicts in the testimony. *Pickering v. State*, 2012 Ark. 280, 412 S.W.3d 143.

To make a valid traffic stop, a police officer must have probable cause to believe that a traffic law has been violated. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001). Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Cribbs v. State*, 2020 Ark. App. 539, at 7, 612 S.W.3d 775, 779. In assessing the existence of probable cause, our review is liberal rather than strict. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997).

The ACIC report information Hendrix received before she conducted the stop showed that the car's registration had expired, and the insurance information was unverifiable. Driving with expired registration is a traffic violation; thus, Hendrix had probable cause to stop the driver of the vehicle based on a traffic violation. *See* Ark. Code Ann. § 27-14-701(a) ("It shall be a misdemeanor for any person to drive or move, or for an owner knowingly to permit to be driven or moved, upon any highway, any vehicle . . . which is not registered within the time period prescribed by law[.])

Moreover, lack of confirmed information regarding insurance is sufficient for probable cause to initiate a traffic stop. *See Erby v. State*, 2023 Ark. App. 220, 663 S.W.3d 811; *Cagle v. State*, 2019 Ark. App. 69, 571 S.W.3d 47; *Small v. State*, 2018 Ark. App. 80,

543 S.W.3d 516.[1] Arkansas Code Annotated section 27-22-104(a)(1)(B) (Repl. 2022) provides that it is "unlawful for a person to operate a motor vehicle within this state unless the motor vehicle and the person's operation of the motor vehicle are each covered by . . . [a]n insurance policy issued by an insurance company authorized to do business in this state." Section 27-22-104(a)(2)(A) provides, in pertinent part, that "a failure of the Vehicle Insurance Database . . . to show current insurance coverage at the time of the traffic stop creates a rebuttable presumption that the motor vehicle or the person's operation of the motor vehicle is uninsured."[2] Having given this our de novo review and giving due weight to the inferences drawn by the circuit court, we hold that the circuit court did not clearly err in denying the motion to suppress.

Additionally, White asserts that according to *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), detaining a person during a traffic stop is a "seizure" of "persons" within the meaning of the Fourth Amendment, and this principle extends to a police officer's search of the vehicle database before the stop has occurred. White asserts that when an online verification system "fails to show current insurance coverage for the driver or the insured," Ark. Code

---

[1] In *Erby*, *supra*, and *Small*, *supra*, the appellants made the same argument that White propounds here. In those cases, we rejected the appellants' assertion, as we do in the instant case, that the ACIC result was unreliable to convey probable cause because the report did not affirmatively report an absence of insurance.

[2] White's argument regarding Hendricks's alleged lack of good faith in conducting the stop is without merit because it does not acknowledge that Hendricks had been informed that the car's registration was expired.

Ann. § 27-22-104(a)(2)(A)(ii) (Repl. 2022), the driver or vehicle is presumed uninsured, and this presumption violates the Fourth Amendment. His argument is not well taken. In *Prouse*, the United States Supreme Court held that the Fourth and Fourteenth Amendments are implicated when a police officer stops an automobile and detains its occupants because those actions constitute a "seizure." The Court held that "[i]n terms of actually discovering unlicensed drivers or deterring them from driving, the spot check does not appear sufficiently productive to qualify as a reasonable law enforcement practice under the Fourth Amendment." *Prouse*, 440 U.S. at 660. *Prouse* is inapplicable here because White was not randomly stopped in a spot-check scenario, and White does not allege that he was. Instead, White asserts that the illegal seizure occurred when Officer Hendrix ran the vehicle's tags through the database. *Prouse* does not address the same issue White raises on appeal, and his argument is not well taken. Accordingly, we affirm.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.